**Jerry Ray GRINSTEAD, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 28S00–9506–CR–642.

Supreme Court of Indiana.

July 22, 1997.

June D. Oldham, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

A jury convicted Jerry Ray Grinstead of murder and conspiracy to commit murder, a Class A felony, and theft and conspiracy to commit theft, both Class D felonies. The trial court imposed sentences of sixty years for murder, forty-five years for conspiracy to commit murder, and three years for theft, all consecutive; and three years for conspiracy

to commit theft, concurrent to all sentences, for a total term of 108 years. In this direct appeal, Grinstead presents three issues for our review:

I. Do the convictions for murder and conspiracy to commit murder violate the Double Jeopardy Clause of the United States Constitution?

II. Did the trial court err in allowing a police officer to testify as an expert witness on blood spatters?

III. Was the evidence sufficient to support the convictions?

We affirm.

### Factual and Procedural Background

The State charged Grinstead and his cousin, Charles Allen Edmonson, with the robbery and murder of Joseph Cross and with conspiracy to commit those crimes. The exact sequence of events surrounding the robbery and murder was largely established by statements Edmonson gave to the police and Grinstead's testimony at trial. Edmonson did not testify but transcripts of several statements he gave to police were admitted under the co-conspirator exception to the hearsay rule. The cassette tapes of the interviews were played for the jury and a transcript of Edmonson's sentencing hearing was also admitted. As explained below, the two men offered different accounts of Grinstead's role in Cross's murder.

The following is Edmonson's side of the story.[1] On June 3, 1994, Grinstead, Edmonson, and Cross were drinking together in a tavern in Linton, Indiana. Cross pulled out his wallet, revealing a quantity of money, and went to the bar to buy a drink. While Cross was at the bar, Grinstead told Edmonson that he was going to rob Cross.[2] When Cross returned he asked Edmonson to drive him to a trailer where he believed he could buy marijuana. The three men left the tav-ern in a truck Edmonson had borrowed from his father and drove off to purchase the marijuana. The three found no one at the trailer and proceeded to a park outside of town. At the park the men exited the truck, Edmonson hit Cross "probably 6 or 7 times" with his fists, and Grinstead took Cross's wallet. Edmonson and Grinstead began to drive away, but Edmonson turned back to "knock [Cross] out" because Edmonson feared that Cross could identify him as the assailant. Edmonson and Grinstead then each hit Cross with a tire iron Grinstead had retrieved from the truck. After bludgeoning and kicking Cross, the two dragged him by his arms down to a nearby lakefront where they believed he would not be seen. Although he believed Cross died at the scene, Edmonson was uncertain whether he or Grinstead inflicted the fatal blows. Grinstead and Edmonson drove away and later spent the money they had stolen from Cross. The next morning the two fabricated an alibi that became the basis for Edmonson's first statement to police.[3]

In testifying in his own defense, Grinstead offered a different account. Grinstead claimed he left the tavern with Edmonson and Cross that afternoon just "for the ride" and denied ever planning with Edmonson to rob or murder Cross. After the three men exited the truck at the park, Grinstead punched Cross and knocked him down and Edmonson kicked Cross several times. Then, according to Grinstead, the two men began to drive away. At some point Edmonson made the remark about Cross's ability to identify him and turned the truck around. When they returned, Edmonson beat Cross with the tire iron. Grinstead "was hollering at him not to do it" but made no attempt to stop the assault. In his testimony, Grinstead

---

1. Edmonson recanted his first statement to police and gave a second statement that he claimed more accurately depicted how the robbery and murder took place. The facts as described here are based on Edmonson's second statement unless otherwise noted. Neither statement was given under oath.

2. Edmonson testified under oath at his sentencing hearing that Grinstead never made this statement.

3. At his sentencing hearing, Edmonson initially reiterated his second statement to police as the true account of events. However, under questioning some inconsistencies appeared. For example, Edmonson testified that he and Grinstead left and returned to the lake area not before but after assaulting Cross with the tire iron. Otherwise Edmonson's testimony was substantially consistent with his second statement to police.

claimed he never kicked or stomped Cross, or used the tire iron to beat him, but did admit helping move Cross's body to the lakefront. Grinstead also denied taking Cross's wallet but did testify that he later threw it out the window of the truck after he and Edmonson left the scene of the killing.[4]

The jury returned with general verdicts of guilty on all counts. Grinstead appeals. We have jurisdiction under Indiana Appellate Rule 4(A)(7).

### I. Double Jeopardy

■ Grinstead argues that his convictions and consecutive sentences for murder and conspiracy to commit murder violate the Double Jeopardy Clause of the United States Constitution, applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Fifth Amendment provides that no "person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "The Double Jeopardy Clause yields three protections: (1) protection from reprosecution for the same offense after an acquittal; (2) protection from reprosecution for the same offense after conviction; and (3) protection from multiple punishments for the same offense." *Kennedy v. State,* 674 N.E.2d 966, 967 (Ind.1996) (citation omitted). This case implicates the last of these. Grinstead contends that the jury could have convicted him of murder based on the same factual elements used to prove the conspiracy charge. Specifically, Grinstead argues that because the jury was given an instruction on accomplice liability, the jury could have convicted him as an accessory to murder based on the overt acts allegedly carried out to further the conspiracy.

■ Absent a "clear statement" to the contrary from the legislature, *Rutledge v. United States,* 517 U.S. 860, —— & n. 14, 116 S.Ct. 1241, 1249 & n. 14, 134 L.Ed.2d 419, 430 & n. 14 (1996), it is presumed that *the legislature did not intend to attach cumulative penalties to the same offense.* Because we find no clear intent in the Indiana statutes involved here to impose multiple penalties for a single offense, we turn to Fifth Amendment double jeopardy precedent to determine whether Grinstead was charged with two separate offenses. The test for defining the "same offense" remains that provided by *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Grinstead does not claim that the statutes for murder and conspiracy violate *Blockburger.* Rather, like the defendant in *Games v. State,* 684 N.E.2d 466, 477 (Ind. 1997), decided today, Grinstead claims that the underlying proof required to convict him at trial cannot withstand double jeopardy scrutiny under the *Blockburger* test. For the proposition that this raises a double jeopardy issue, Grinstead relies on our decision in *Derado v. State,* 622 N.E.2d 181 (Ind.1993). There we suggested that the reviewing court could compare not only the statutory elements of the two crimes, but also the factual elements alleged in the information or indictment and how the jury was instructed on those elements.

■ This argument fails even if overlap in the charging instrument or jury instructions were sufficient to invoke double jeopardy.[5] That point is academic, howev-

---

4. Like Edmonson, Grinstead gave several unsworn statements to police, and in each subsequent account conceded a greater role in the crimes. At first Grinstead denied any involvement and offered the alibi he concocted with Edmonson; Grinstead later conceded being at the scene of the murder but claimed he never touched Cross. His testimony at trial was yet another account of events.

5. The charging instrument clearly alleged separate elements. And even if review of the jury instructions were part of the multiple-punishment analysis, Grinstead would not prevail. Indiana Code § 35–41–2–4 provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." The jury was instructed on accomplice liability at the State's request without objection from Grinstead. That the facts developed at trial warranted an instruc-

er, because Grinstead advances his claim only under the Federal Constitution. Our decision today in *Games* eliminates any argument Grinstead might have along these lines under the Federal Constitution. For the reasons explained in *Games,* the rule of *Derado* and other cases holding to the same effect, *see, e.g., Gregory–Bey v. State,* 669 N.E.2d 154, 157–58 (Ind.1996), is no longer an accurate statement of federal double jeopardy law. To the contrary, review of multiple punishments under the Double Jeopardy Clause of the Federal Constitution requires that we look only to the relevant statutes in applying *Blockburger,* and no further. The factual elements in the charging instrument and jury instructions are not part of this inquiry.

 It is well settled that convictions for murder and conspiracy to commit murder arising out of the same act or transaction do not ipso facto violate the Double Jeopardy Clause. *Willoughby v. State,* 660 N.E.2d 570, 583 (Ind.1996) (citing cases). The murder and conspiracy statutes here pass *Blockburger* because each crime as defined by statute requires proof of at least one fact that the other does not. Murder requires proof of a killing, but conspiracy does not; and conspiracy requires proof of an agreement to commit a felony, but murder does not. *Compare* Ind.Code § 35–42–1–1 (1993) *with* Ind.Code § 35–41–5–2 (1993). Accordingly, Grinstead's convictions and consecutive sentences[6] for murder and conspiracy to commit murder do not violate his federal

constitutional right to be free from double jeopardy.

## II. Expert Witness Testimony on Blood Spatters

 The evidence most favorable to the verdict showed that Grinstead was covered with small spatters of blood on his face and arms after the murder. One of the police officers who investigated Cross's death, Alan McElroy, testified as a rebuttal witness for the State on the issue of blood spatters. The State introduced McElroy's testimony to rebut Grinstead's assertions that he was not near Cross when the assault with the tire iron took place. McElroy testified that the small specks of blood on Grinstead were consistent with a "medium impact" spattering, such as that caused by a beating with a blunt object. This testimony presumably enabled the jury to infer that Grinstead was much closer to Cross (perhaps close enough to do the beating himself) than he acknowledged in his own testimony. Expert testimony may be admitted if scientific, technical or other specialized knowledge will assist the trier of fact in understanding the evidence. Ind. Evidence Rule 702(a). In addition, the witness must be shown to have knowledge, skill, experience, training or education on the subject. *Id.* Grinstead argues that McElroy failed to satisfy the latter requirement because he lacked sufficient skill, knowledge and experience to give expert evidence on blood spatters. We review the admissibility

tion on accomplice liability is not disputed. Again, Grinstead contends that he could have been convicted as an accessory to murder based solely on the overt acts carried out to further the conspiracy. These acts were: taking Cross to a remote location; moving Cross's body from the location where he was killed; or asking another person to provide an alibi. Even under an accomplice theory, the State had to prove at least one factual element not required to convict for conspiracy. Whether prosecuting Grinstead as a principal or accessory, the State was required to show that Cross was intentionally or knowingly killed by somebody. *Davis v. State,* 267 Ind. 152, 158, 368 N.E.2d 1149, 1152 (1977) (person cannot be convicted as an accessory absent proof that underlying offense was actually committed). This factual element—a killing—had to be proved under either theory to convict Grinstead of murder, but did not have to be proved to find Grinstead guilty of conspiracy. *See Stonebraker v.*

*State,* 505 N.E.2d 55, 58 (Ind.1987) (rejecting double jeopardy argument on same grounds in case involving murder under accomplice theory and conspiracy to commit murder); *Smith v. State,* 655 N.E.2d 532, 544–48 (Ind.Ct.App.1995) (same), *reh'g denied, trans. denied.*

6. Grinstead's double jeopardy argument challenges only the propriety of the convictions and not the related but different issue of the trial court's decision to impose consecutive sentences. Although the issue was preserved below, it has not been cogently argued here. App.R. 8.3(A)(7); *Marshall v. State,* 621 N.E.2d 308, 318 (Ind. 1993). In any event, the trial court did not abuse its discretion in imposing consecutive sentences because the reasons for the sentences were clearly and thoroughly outlined at the sentencing hearing.

of expert testimony for an abuse of discretion. *Byrd v. State*, 593 N.E.2d 1183, 1185 (Ind.1992).

 Blood spatter analysis is an area of forensic science generally beyond the ken of the ordinary layperson and thus is a proper topic for expert testimony. *James v. State*, 613 N.E.2d 15, 21–22 (Ind.1993), *appeal after remand*, 643 N.E.2d 321 (Ind. 1994); *Hampton v. State*, 588 N.E.2d 555, 557–58 (Ind.Ct.App.1992). As the State contends, we have held expert testimony on blood spatters to be admissible in prior cases. *See, e.g., Stidham v. State*, 637 N.E.2d 140, 143 (Ind.1994); *King v. State*, 531 N.E.2d 1154, 1157 (Ind.1988); *Fox v. State*, 506 N.E.2d 1090, 1094–96 (Ind.1987). These decisions, however, did not create particular criteria for establishing blood-spatter expertise and no such litmus test of qualifications exists. *James*, 613 N.E.2d at 22. Here Officer McElroy's only training on the subject was a two-week police academy course that included a specific section on blood spatters. In this regard this case is not unlike *Fox*, where we upheld expert testimony by a police officer who had also attended a brief course training him to analyze blood spatters. *Fox*, 506 N.E.2d at 1095. Although McElroy's knowledge of the topic did not rise to the level of a forensic serologist, *cf. King*, 531 N.E.2d at 1157, he demonstrated sufficient expertise to testify about the possible causes of the blood spatters on Grinstead's face and arms. McElroy described to the jury the differences between three major types of blood spatters and which injuries or physical impacts cause each type of spatter. That McElroy did not personally view the blood spatters on Grinstead or subject them to chemical analysis impacts the weight of his testimony but not its admissibility. *Stidham*, 637 N.E.2d at 143. To the extent McElroy lacked detailed knowledge or training, Grinstead's lawyer was able to bring this out in an untrammeled cross-examination. *See Fox*, 506 N.E.2d at 1095 (no prejudice resulted from admitting expert testimony on blood spatters where defendant failed to cross-examine expert on his qualifications). Under these circumstances, we see no abuse of discretion.

### III. Sufficiency of the Evidence

 Finally, Grinstead mounts a generalized attack on all four convictions, claiming there was insufficient evidence to support them. Instead of explaining why each conviction was unsupported by the proof offered at trial, Grinstead attacks the credibility of his chief accuser and urges us to "sift and probe" Edmonson's statements without reweighing them. The inconsistencies in Edmonson's account presumably impacted his credibility, but reconciling and weighing Edmonson's statements was the province of the jury. *Marshall v. State*, 621 N.E.2d 308, 320 (Ind.1993) (jury resolves conflicts in evidence and is not required to believe every witness). Grinstead predictably points to bits and pieces of the evidence that, depending on how they are weighed, might cut in his favor. When evaluating claims of insufficient evidence, however, we do not assess witness credibility or reweigh evidence. A conviction will be affirmed if there is probative evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Fisher v. State*, 671 N.E.2d 119, 121 (Ind. 1996), *reh'g denied*. The State presented such evidence here. The jury could have inferred an agreement to rob and kill Cross from Edmonson's and Grinstead's conduct before and after the murder. Grinstead's own testimony sufficed to convict him of murder under an accomplice theory. Indeed, Grinstead admitted punching Cross with his fist and also conceded moving the body to the lakefront after Cross was beaten with the tire iron. The theft charge was supported by Edmonson's statement that Grinstead took Cross's wallet. Accordingly, Grinstead's claim of insufficient evidence also fails.

### Conclusion

The convictions and sentences of Jerry Ray Grinstead for murder, conspiracy to commit murder, theft, and conspiracy to commit theft are affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.