Arturo CHAVEZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–9812–CR–986.

Court of Appeals of Indiana.

Jan. 28, 2000.

As Amended Feb. 10, 2000.

Kevin R. O'Reilly, O'Reilly Law Offices, Lafayette, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-defendant Arturo Chavez ("Arturo") appeals his convictions by a jury of four counts of dealing in marijuana in an amount of ten pounds or more,[1] two counts of conspiracy to commit dealing in marijuana in an amount of ten pounds or more,[2] and one count of corrupt business influence,[3] all Class C felonies.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### Issues

Arturo presents four issues for our review, which we restate as follows:

(1) whether his several convictions for dealing in marijuana, conspiracy to commit dealing in marijuana, and corrupt business influence are barred by the Indiana constitutional protection against double jeopardy;

(2) whether there was sufficient evidence to establish venue in one of his convictions for dealing in marijuana;

(3) whether two of the incidents of dealing in marijuana for which he was convicted constitute a single episode of criminal conduct for purposes of sentencing; and

---

**1.** *See* IND.CODE § 35–48–4–10 (possession with intent to deliver).

**2.** *See* IND.CODE §§ 35–48–4–10 and 35–41–5–2.

**3.** *See* IND.CODE § 35–45–6–2 (Indiana's Racketeer Influenced and Corrupt Organizations Act).

(4) whether his sentence is manifestly unreasonable.

## Facts and Procedural History

This case involves a large-scale marijuana operation between Texas and Tippecanoe County, Indiana. Abe A. Voorhees ("Voorhees") first met Arturo in October 1996. At that time, the two men entered into an arrangement whereby Voorhees agreed to transport to Indiana marijuana that Arturo and his brother, Jose Chavez, Jr. ("Jose"), obtained from an unknown source in Texas. In exchange for transporting the marijuana, Voorhees would receive certain quantities of the drug as payment. Between December 1996 and January 1997, Voorhees made several trips to and from Texas for this purpose.

On one such occasion, Voorhees and his girlfriend, Cori McGlothlin ("McGlothlin"), flew to Texas, where Arturo met them at the airport and directed them to a car he had waiting for them. Voorhees and McGlothlin then obtained thirty to forty pounds of marijuana from Jose, hid the drugs in the door panels and spare tire of the car, and drove back to their mobile home in Linden, Indiana.[4] The couple arrived in Linden on January 17, 1997, after which Arturo and Jose drove from Texas to Indiana to break the marijuana down for distribution. As he did on occasion, Arturo kept approximately ten pounds of the marijuana for himself. He and Jose also gave Voorhees four pounds of marijuana as payment for making the trip and "fronted" him another sixteen to twenty pounds, which Voorhees distributed to customers in Tippecanoe County. Voorhees paid Arturo for the drugs once they were sold.

In April 1997, Arturo advised Voorhees that he had found another way to transport marijuana from Texas to Indiana. Voorhees learned that Arturo and Jose were shipping the drugs to Lafayette, Indiana[5] through the United Parcel Service ("UPS"). Bradley E. Hoskins ("Hoskins") and Eugene W. Seabolt ("Seabolt") had agreed to sign for the UPS packages once they arrived, and a third man, John S. Byrd ("Byrd"), had agreed to retrieve the packages from Hoskins' house and take them to Seabolt's house. Thereafter, Arturo and Jose would come to Lafayette; pay Hoskins, Seabolt, and Byrd; and break the marijuana shipments down for distribution.

On June 23, 1997, two UPS packages containing a total of twenty pounds of marijuana arrived at Hoskins' address, and one UPS package containing approximately sixteen pounds of marijuana arrived at Seabolt's address. The packages had been shipped by Arturo and Jose "three-day select." Unbeknownst to them, the boxes had been previously intercepted by the Houston Police Department in Texas. Sergeant William Peevler of the Lafayette Police Department posed as a UPS delivery man and personally delivered the packages to each address. Seabolt and Byrd were subsequently arrested.

Following the arrests of Seabolt and Byrd, Arturo contacted Voorhees to retrieve another load of marijuana from Texas. There, Arturo and Jose hid two fifteen-pound blocks of marijuana in a speaker box which Voorhees transported back to Indiana in the bed of his pick-up truck. Voorhees returned to Indiana in the early morning hours of August 7, 1997, and he and another man broke the marijuana down for distribution. Voorhees subsequently sold a portion of the marijuana to a confidential informant who had purchased drugs from Voorhees before and knew he had returned from Texas that morning with a new shipment. Thereafter, police arrested Voorhees.

On January 20, 1998, the State charged Arturo as follows:

---

4. Linden is in Montgomery County, directly south of and adjacent to Tippecanoe County.

5. Lafayette is in Tippecanoe County.

## Count I

On or about the 25th Day of December, 1996, in Tippecanoe County, State of Indiana, Arturo J. Chavez, Jose L. Chavez, Jr., and Abe A. Voorhees did knowingly or intentionally possess, with intent to deliver, marijuana, pure or unadulterated, in an amount of ten (10) pounds or more.

## Count II

On or about the 17th day of January, 1997, in Tippecanoe County, State of Indiana, Arturo J. Chavez, Jose L. Chavez, Jr., and Abe A. Voorhees did knowingly or intentionally possess, with intent to deliver, marijuana, pure or unadulterated, in an amount of ten (10) pounds or more.

## Count III

On or about the 7th day of August, 1997, in Tippecanoe County, State of Indiana, Arturo J. Chavez, Jose L. Chavez, Jr., and Abe A. Voorhees did knowingly or intentionally possess, with intent to deliver, marijuana, pure or unadulterated, in an amount of ten (10) pounds or more.

## Count IV

On multiple occasions in 1996 and 1997, including December, 1996, January, 1997, and July–August, 1997, in Tippecanoe County, State of Indiana, Arturo J. Chavez, Jose L. Chavez, Jr., and Abe A. Voorhees, with the intent to commit Dealing in Marijuana, Including Amounts of Ten (10) Pounds Or More, did agree with each other to import marijuana, in amounts of ten (10) pounds or more, for delivery to other persons in Tippecanoe County, and one or more of the following overt acts were performed in furtherance of said agreement, to wit: on multiple occasions in 1996, and 1997, Voorhees went to the State of Texas; Voorhees met with Jose Chavez and/or Arturo Chavez to obtain marijuana, including amounts over ten pounds; Arturo Chavez and/or Jose Chavez obtained marijuana from an unknown source and Arturo Chavez and/or Jose Chavez delivered marijuana, including amounts more than ten (10) pounds, to Voorhees; Voorhees transported said marijuana to Tippecanoe County for Arturo Chavez and Jose Chavez; Arturo and/or Jose Chavez came to Tippecanoe County, met with Voorhees, and took possession of said marijuana; Arturo Chavez and/or Jose Chavez delivered part of said marijuana to Voorhees for distribution to other persons and retained possession of the remaining marijuana for delivery to other persons [and] themselves.

## Count V

On or about the 23rd day of June, 1997, in Tippecanoe County, State of Indiana, Arturo J. Chavez, Jose L. Chavez, Jr., Bradley E. Hoskins and John S. Byrd did knowingly or intentionally possess, with intent to deliver, marijuana, pure or unadulterated, in an amount of ten (10) pounds or more.

## Count VI

On or about the 23rd day of June, 1997, in Tippecanoe County, State of Indiana, Arturo J. Chavez, Jose L. Chavez, Jr., and Eugene W. Seabolt did knowingly or intentionally possess, with intent to deliver, marijuana, pure or unadulterated, in an amount of ten (10) pounds or more.

## Count VII

On multiple occasions from March, 1997, to June, 1997, including May and June, 1997, in Tippecanoe County, State of Indiana, Arturo J. Chavez, Jose L. Chavez, Jr., Bradley Hoskins, John Byrd and Eugene Seabolt, with the intent to commit Dealing In Marijuana, Including Amounts of Ten (10) Pounds Or More, did agree with each other to import marijuana, in amounts of ten (10) pounds or more, for delivery to other persons in Tippecanoe County, and one or more of

the following overt acts were performed in furtherance of said agreement, to wit: On multiple occasions during the first half of 1997 Arturo Chavez and/or Jose Chavez would obtain marijuana, including amounts over ten (10) pounds; Arturo Chavez and/or Jose Chavez would arrange to ship said marijuana to Hoskins, Seabolt and Byrd; Hoskins, Seabolt and Byrd would receive marijuana, including amounts over ten (10) pounds, and hold said marijuana until Arturo Chavez and/or Jose Chavez came to Tippecanoe County to take possession of said marijuana, with the intent to deliver it to other persons; and, Arturo Chavez and/or Jose Chavez would pay Hoskins, Byrd and Seabolt for accepting delivery of, and holding, said marijuana.

In addition, the State charged Arturo with corrupt business influence under Indiana's Racketeer Influenced and Corrupt Organizations Act ("RICO"). Count VIII essentially reiterated the activities enumerated in Counts I through VII and alleged that such conduct amounted to a pattern of racketeering activity between Arturo, Jose, Voorhees, Hoskins, Byrd, and unknown others who were "associated with an enterprise, which was a group and an association in fact, having the purpose of dealing, and possessing with intent to deliver, controlled substances."

A jury trial was commenced on October 27, 1998. Several witnesses, including McGlothlin, Voorhees, Seabolt, Hoskins, and Byrd were granted use immunity to testify against Arturo. At trial, the State maintained that it did not have to prove Arturo possessed marijuana or was physically in Tippecanoe County on the dates alleged in the informations, only that he "aided, induced, or caused" another person to commit the crimes as charged. The jury was likewise instructed on the issue of accomplice liability.[6] Following three days of evidence, the jury returned unanimous verdicts of guilty on all counts except Count I. Thereafter, the trial court sentenced Arturo to an aggregate term of forty-eight years.[7] He now appeals.

## Discussion and Decision

### I. Double Jeopardy

Initially, Arturo contends that his several convictions for dealing in marijuana, conspiracy to commit dealing in marijuana, and corrupt business influence are barred by the Indiana constitutional protection against double jeopardy.[8] Specifically, he urges that (1) his convictions for dealing in marijuana and conspiracy to commit dealing in marijuana violated his state double jeopardy rights; and (2) his convictions under RICO and for the predicate offenses violated his state double jeopardy rights. We address each claim in turn.

### A. Dealing and Conspiracy to Commit Dealing

Arturo argues that his convictions for dealing in marijuana under Counts III, V, and VI and his convictions for conspiracy to commit dealing in marijuana under Counts IV and VII amount to multiple punishment for the "same offense" as proscribed by Art. I, § 14 of the Indiana Constitution. *See Kokenes v. State*, 213 Ind. 476, 13 N.E.2d 524 (1938). He claims that the State did not prove he actually possessed marijuana with the intent to deliver in Tippecanoe County on August 7, 1997 and again on June 23, 1997; rather, the State proved only that Arturo "aided,

---

6. The jury was instructed that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense."

7. The trial court imposed the maximum enhanced sentence of eight years on each count for which Arturo was convicted. The court ordered all sentences to run consecutively, except for Count III, which was ordered to run concurrently with Count II.

8. Our review of this issue is confined to an analysis under the Indiana Constitution, as Arturo does not raise a claim under the federal Double Jeopardy Clause.

induced, or caused" others, namely Voorhees, Hoskins, Byrd, and Seabolt, to do the same. As such, Arturo contends that identical proof was used to show both the inducement and the conspiratorial agreement, thereby precluding convictions for both the conspiracy and the underlying offense.

■ Our supreme court recently pronounced a state double jeopardy standard independent of the federal double jeopardy standard set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Richardson v. State*, 717 N.E.2d 32 (Ind.1999). In *Richardson*, the court concluded that two convictions may be the "same offense" in violation of the Indiana Double Jeopardy Clause if, "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49 (emphasis in original).

■ Under the statutory elements test, "[e]ach offense must contain at least one element which is separate and distinct from the other offense so that the same evidence is not necessary to convict for both offenses." *Id.* at 52. It is well settled, and Arturo concedes, that conspiracy to commit a crime and the crime itself are not ordinarily considered the "same offense" for purposes of double jeopardy analysis. *See Grinstead v. State*, 684 N.E.2d 482, 486 (Ind.1997) (murder and conspiracy to commit murder); *Derado v. State*, 622 N.E.2d 181, 184 (Ind.1993) (deal-

ing in cocaine and conspiracy to commit dealing in cocaine).[9] Here, the elements of dealing in marijuana and the elements of conspiracy to commit dealing in marijuana are not the same, as each requires proof of facts which the other does not. Conspiracy to commit dealing in marijuana requires an agreement by two or more people to deal in the drug and an overt act in furtherance of the agreement, but does not require that any marijuana ever be possessed with the intent to deliver. *See* IND. CODE §§ 35–48–4–10(a)(2)(C) and 35–41–5–2. On the other hand, a conviction for dealing in marijuana requires an actual possession of marijuana with the intent to deliver. *Id.* We therefore conclude that the challenged offenses in this case are not the same under Indiana's statutory elements test.

■■ Our state double jeopardy analysis, however, does not end here. Even though the crimes of dealing and conspiracy to commit dealing are not the same offenses under the statutory elements test, we must also apply the following actual evidence test:

[T]he actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

9. *Derado* was implicitly overruled by *Grinstead*, 684 N.E.2d at 486, wherein our Supreme Court held:

For the reasons explained in *Games [v. State*, 684 N.E.2d 466 (Ind.1997) ], the rule of *Derado* and other cases holding to the same effect, *see, e.g., Gregory–Bey v. State*, 669 N.E.2d 154, 157–58 (Ind.1996), is no longer an accurate statement of federal double jeopardy law. To the contrary, review of multiple punishments under the Double Jeopardy Clause of the Federal Con-

stitution requires that we look only to the relevant statutes in applying *Blockburger*, and no further.

However, *Derado* did not refer to our state constitutional provision. *See Richardson*, 717 N.E.2d at 49, n. 36. Obviously, while no longer an accurate statement of federal double jeopardy law, *Derado, Gregory–Bey*, and other such cases are an accurate pronouncement of state double jeopardy law in light of *Richardson*, and are properly relied upon in a purely state double jeopardy analysis.

*Richardson,* 717 N.E.2d at 53. Moreover, while not determinative, the jury instructions and presentations of counsel can be helpful in our assessment of whether the jury used the same evidence to establish multiple offenses. *Id.* at 54, n. 48.

■ The evidence presented at trial reveals that Arturo's liability on the dealing in marijuana counts was premised on his status as an accomplice, because he was not actually in possession of the marijuana on August 7, 1997 or on July 23, 1997, nor was he even present in Indiana on those dates. Indeed, Arturo's activities relative to the conspiracy counts were the very same activities upon which the State relied to tie Arturo to the dealing counts and prove his status as an accomplice.

In addition, the jury was instructed that Arturo and his alleged co-conspirators performed numerous overt acts in furtherance of their respective agreements to deal marijuana under Counts IV and VII. However, one of the overt acts listed in the jury instruction on Count IV was that Arturo and Jose "delivered part of the marijuana to Voorhees *for distribution to other persons,*" and one of the overt acts listed in the jury instruction on Count VII was that "Hoskins, Seabolt, and Byrd would . . . hold said marijuana until Arturo . . . and/or Jose . . . came to Tippecanoe County to take possession of said marijuana, *with the intent to deliver it to other persons.*" [10] (Emphasis added.) Thus, in

order to obtain convictions for conspiracy to commit dealing, the State was required to prove the overt act that Voorhees, Hoskins, Byrd, and Seabolt possessed marijuana with the intent to distribute it to other persons on the dates alleged.

■ A defendant is generally not subjected to double jeopardy by convictions for both inducing a crime and conspiracy to commit the crime where the inducement charge requires that the offense actually be committed but the conspiracy charge requires only that an overt act in furtherance of the conspiracy be committed, because the conspiracy could be completed without occurrence of the actual crime. *Stonebraker v. State,* 505 N.E.2d 55, 58 (Ind.1987). In the instant case, however, the manner in which Arturo was charged and the jury was instructed rendered the occurrence of the substantive crime, i.e., the possession of marijuana with intent to deliver, an overt act in furtherance of the conspiracy. Convictions for both conspiracy and the underlying offense are not permitted where the overt act charged in the conspiracy is *the* underlying offense. *Derado,* 622 N.E.2d at 184. The State here was relieved of the requirement to present evidence to prove the dealing in marijuana charges independent of the evidence it was required to prove the conspiracy. In other words, once the State proved its case for conspiracy, it had necessarily proven its case for dealing.[11] This violates Indiana's

---

**10.** The jury instructions regarding the two conspiracy counts mirror the charges alleged in the State's informations on conspiracy. However, while the conspiracy informations state that the conspirators committed "one or more of the following overt acts," the jury instructions required the State to prove *all* of the overt acts before the jury could find Arturo guilty of the conspiracy charges.

**11.** Our holding would follow even if the trial court had instructed the jury that the State was required to prove only "one or more of" the delineated overt acts or "an" overt act to find Arturo guilty of conspiracy. In the absence of specific dates on which the overt acts of dealing in marijuana occurred, it was possible for the jury to have convicted Arturo of

conspiracy based solely upon the possessions of marijuana with intent to deliver on August 7, 1997 and on July 23, 1997. Under such circumstances, the State could have secured a conviction for conspiracy based upon the same overt act supporting the actual dealing conviction. As previously discussed, this violates state double jeopardy principles. Likewise, in *Morgan v. State,* 648 N.E.2d 1164 (Ind.Ct.App.1995), *adopted in relevant part,* 675 N.E.2d 1067 (Ind.1996), the jury was instructed that the State needed to prove only "an" overt act to prove the conspiracy to commit dealing in cocaine. One of the overt acts listed was the sale of cocaine, but the date on which the overt act of selling cocaine occurred was not specified. On appeal, we held:

Double Jeopardy Clause and its proscription of multiple punishments for the same offense.

Applying the actual evidence test, we must conclude that Arturo's convictions for dealing in marijuana under Count III and conspiracy to commit dealing in marijuana under Count IV constitute multiple punishment for the same offense, because the State was required to prove no fact to obtain the conviction for dealing as an accomplice in addition to those facts that it was required to prove to obtain the conviction for conspiracy. *See id.*; *cf. Smith v. State*, 655 N.E.2d 532, 548 (Ind.Ct.App. 1995), *trans. denied, disagreed with on other grounds by Thorne v. State*, 687 N.E.2d 604 (Ind.Ct.App.1997), *trans. denied.* Likewise, Arturo's convictions for dealing under Counts V and VI and conviction for conspiracy under Count VII also constitute multiple punishments for the same offense. Arturo's state double jeopardy rights have been violated with respect to these counts. His convictions and sentences for conspiracy to commit dealing in marijuana under Counts IV and VII must therefore be vacated.[12] *See Gregory–Bey v. State*, 669 N.E.2d 154, 158 (Ind.

1996) (vacating conspiracy to commit robbery conviction).[13]

### B. RICO and the Predicate Offenses

■ Arturo's second double jeopardy claim involves his convictions for both corrupt business influence under Indiana's RICO statute and for the predicate offenses supporting the RICO charge. Indiana's RICO statute is essentially patterned after the federal RICO statute. *Dellenbach v. State*, 508 N.E.2d 1309, 1315 (Ind.Ct.App.1987). Federal courts have consistently held that separate convictions for both a RICO violation and its predicate offenses do not violate federal double jeopardy principles, because Congress intended to permit the imposition of cumulative sentences; Indiana courts have followed suit. *See Garrett v. United States*, 471 U.S. 773, 793, 105 S.Ct. 2407, 2419, 85 L.Ed.2d 764 (1985); *State v. Allen*, 646 N.E.2d 965, 971 (Ind.Ct.App.1995), *trans. denied*; *Dellenbach*, 508 N.E.2d at 1315. Indeed, federal courts have uniformly held that a conviction for conspiracy to possess or to deliver cocaine in violation of 21 U.S.C. § 846 may be used as a predicate offense for a RICO violation without offending a defendant's double jeopardy rights. *Allen*, 646 N.E.2d at 971 (citing

---

Because neither the preliminary nor the final instructions informed the jury of the date upon which the overt act of the cocaine sale occurred, it is possible for the jury to have convicted Morgan of conspiracy based upon any one of the several alleged sales. It is also possible that the transaction [constituting the underlying offense] was the sale of cocaine that constituted the sole overt act in furtherance of the conspiracy found by the jury. While the State presented evidence of other sales, the manner in which the offenses were charged and the jury was instructed relieved the State of the requirement to present such independent evidence. The State could have gained a conviction for conspiracy based upon the same overt act supporting the dealing conviction. This violates double jeopardy principles.

*Morgan*, 648 N.E.2d at 1172.

12. We note that our decision today under the two-part double jeopardy standard pronounced by the majority in *Richardson* is also

consistent with Justice Boehm's concurring opinion therein, where he discusses the resolution of multiple punishment issues under existing statutory and common law rather than on constitutional grounds. *Richardson*, 717 N.E.2d at 71 (Boehm, J. concurring). As Justice Boehm observes, our appellate courts had held prior to *Richardson* that convictions must be supported by facts that are "independently supportable, separate and distinct." *Griffin v. State*, 717 N.E.2d 73, 90 (Boehm, J. concurring) (quoting *Thompson v. State*, 259 Ind. 587, 592, 290 N.E.2d 724, 727 (1972)); *see also Gregory–Bey*, 669 N.E.2d at 157–58 ("[w]hen the charging information and jury instructions rely on the same facts to prove both the underlying felony and the overt act committed in furtherance of the conspiracy to commit that felony, double jeopardy has been violated."); *Derado*, 622 N.E.2d at 184. Thus, the instant appeal could have been resolved even in the absence of *Richardson*, based solely upon existing common law.

13. *See* footnote 9.

several federal cases, including *United States v. Gonzalez,* 921 F.2d 1530, 1537 (11th Cir.1991), *cert. denied,* 502 U.S. 860, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991); *United States v. Boldin,* 772 F.2d 719, 727 (11th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986)). The rationale supporting these holdings has been that the federal double jeopardy standard set forth in *Blockburger* is a rule of statutory construction that is inapplicable where the legislature has evinced an intent that each violation constitute a separate offense. *Whalen v. United States,* 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980). Because *Blockburger* serves as a means of discerning congressional purpose, it should not be controlling where there is clear indication of a contrary legislative intent. *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981).

 Arturo counters, however, that in light of Indiana's newly pronounced double jeopardy standard, which goes beyond the *Blockburger* test to look at the evidence adduced at trial, this rationale of statutory construction does not apply. Accordingly, he argues that convictions under RICO, as in any other offense, must be subjected to the same two-part analysis under *Richardson.* We cannot agree. "[T]he double jeopardy analysis employed for single-course of conduct crimes [is] not analogous to double jeopardy analysis in complex criminal enterprise cases." *Allen,* 646 N.E.2d at 970 (citing *Garrett,* 471 U.S. at 778, 105 S.Ct. at 2411, 85 L.Ed.2d 764). Moreover, regardless of the standard used to determine whether a defendant has been subjected to double jeopardy, the intent of the legislature with respect to RICO remains the same: to permit cumu-

lative punishment and to "seek eradication of organized crime ... by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *Dellenbach,* 508 N.E.2d at 1315 (quoting Organized Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 923 (1970)).

To sustain Arturo's claim of double jeopardy would render RICO's intended threat of cumulative punishment powerless.[14] We cannot logically conclude that the legislature meant to *substitute* the RICO offense for the underlying predicate offenses rather than to permit prosecution for RICO in addition to prosecution for the predicate offenses. *See Garrett,* 471 U.S. at 785, 105 S.Ct. at 2414–15, 85 L.Ed.2d 764 (discussing federal continuing criminal enterprise ("CCE") statute).[15] As the U.S. Supreme Court reasoned in *Garrett*:

[I]t would be illogical for Congress to intend that a choice be made between the predicate offenses and the CCE offense in pursuing major drug dealers. While in the instant case Garrett claims that the Government was aware of the possibility of bringing the CCE charge before he was indicted on the [predicate] offenses, in many cases the Government would catch a drug dealer for one offense before it was aware of or had the evidence to make a case for other drug offenses he had committed or in the future would commit. The Government would then be forced to choose between prosecuting the dealer on the offense of which it could prove him guilty or releasing him with the idea that he would continue his drug-dealing activities so that the Government might catch him

**14.** Were we to apply *Richardson* to the facts of the instant case, Arturo's convictions under RICO and for its predicate offenses would be barred. More importantly, we can conceive of no set of circumstances under which the facts used to prove a RICO violation would be different than the facts used to prove the predicate offenses, thereby running afoul of

the state double jeopardy principles set forth in *Richardson.*

**15.** CCE is very similar to RICO in that it seeks to punish a scheme of ongoing criminal activity and requires proof of predicate offenses. *Allen,* 646 N.E.2d at 969.

twice more and then be able to prosecute him on the CCE offense. Such a situation is absurd and clearly not what Congress intended.

*Id.,* 471 U.S. at 785–86, 105 S.Ct. at 2415, 85 L.Ed.2d 764.

█ Likewise, to constrain Indiana law enforcement to choose either to convict on the predicate offense, thus foreclosing the possibility of a RICO charge, or to idly wait until a drug dealer has committed enough crimes to constitute a RICO violation is absurd and would frustrate the very purpose for which the statute was enacted. *See id.,* 471 U.S. at 789–90, 105 S.Ct. at 2417, 85 L.Ed.2d 764 ("We do not think that the Double Jeopardy Clause may be employed to force the Government's hand in this manner."). "The federal courts liberally construe the federal statute and we similarly interpret Indiana's RICO statute." *Koger v. State,* 513 N.E.2d 1250, 1257 (Ind.Ct.App.1987). Therefore, regardless of the double jeopardy analysis that Indiana's Constitution mandates, we hold that a defendant may be convicted of both a RICO violation and of its predicate offenses.[16]

## II. Venue

Arturo next asserts that the evidence of venue was insufficient to support his conviction for Count II, dealing in marijuana. He claims that the State failed to prove that any act in furtherance of the crime took place in Tippecanoe County as alleged in the charging information. We disagree.

█ It is the State's burden to prove that the offense charged occurred in the county identified in the charging information. *Wurster v. State,* 708 N.E.2d 587, 599 (Ind.Ct.App.1999), *affirmed,* 715 N.E.2d 341 (Ind.1999). Venue must be proven by a preponderance of the evidence

and may be established by circumstantial evidence. *Id.* The State has met its burden if the facts and circumstances of the case permit the jury to infer that the crime occurred in a given county. *Norcutt v. State,* 633 N.E.2d 270, 272 (Ind.Ct.App. 1994). This Court treats a claim of insufficient evidence of venue in the same manner as other claims of insufficient evidence. *Morris v. State,* 274 Ind. 161, 409 N.E.2d 608, 610 (1980). Accordingly, we neither reweigh the evidence nor assess the credibility of witnesses, and look only to the evidence and the reasonable inferences to be drawn therefrom which support the conclusion of requisite venue. *Id.*

█ Voorhees testified at trial that he and his girlfriend, McGlothlin, drove directly from Texas to their mobile home in Linden with thirty to forty pounds of marijuana packed in the door panels and spare tire of a car. Thereafter, Arturo and Jose arrived in Linden to break the marijuana down for distribution. Voorhees testified that he distributed sixteen to twenty pounds of marijuana to his usual customers in Tippecanoe County. McGlothlin corroborated Voorhees' testimony, affirming that "he was distributing or selling to … people here in Tippecanoe County." Regardless of Voorhees' residence in neighboring Montgomery County, this evidence was sufficient to permit the jury to infer that Voorhees—and hence Arturo, as Voorhees' accomplice—was dealing marijuana in Tippecanoe County as charged in Count II.

Nevertheless, Arturo argues that "the evidence does not show whether Voorhees took this marijuana to Tippecanoe County to sell, or whether people from Tippecanoe County came to Linden to purchase it." Arturo proposes that Voorhees' *practice* was to sell the drug from his home, citing

---

**16.** Our holding on this issue is consistent with the well settled principle, as reiterated by Justice Boehm in his concurring opinion in *Richardson,* that it is "the duty of the court not to enter upon the consideration of a constitutional questions [sic] where the court can

perceive another ground upon which it may properly rest its decision." *Richardson,* 717 N.E.2d at 71 (Boehm, J. concurring) (quoting *Bayh v. Sonnenburg,* 573 N.E.2d 398, 402 (Ind.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415).

to a single incident on August 7, 1997, where two individuals traveled to Linden to purchase marijuana. Arturo fails to acknowledge, however, that at the time of Voorhees' arrest on that very date, he was driving away from his home and had two pounds of marijuana between his legs on the car seat. Arturo's claim on this issue invites us to reweigh the evidence, a task that is not within our prerogative on appeal. Venue was properly established. We find no error.

### III. Episode of Criminal Conduct

■ Arturo contends that two of the incidents of dealing in marijuana for which he was convicted, namely Counts V and VI, constitute a single episode of criminal conduct for purposes of sentencing. As such, he argues that the trial court's imposition of consecutive sentences for both counts is violative of IND.CODE § 35–50–1–2, which reads:

> [T]he total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

IND.CODE § 35–50–1–2(c). The statute further defines an "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." IND.CODE § 35–50–1–2(b).

Arturo correctly points out that "the singleness of a criminal episode should be based on whether the alleged conduct was so closely related ... that a complete account of one charge cannot be related without referring to details of the other charge." See Tedlock v. State, 656 N.E.2d 273, 276 (Ind.Ct.App.1995). However, we fail to discern how the facts comprising Counts V and VI are so closely intertwined as to prohibit the trial court from imposing consecutive sentences. Specifically, while each of the dealing offenses culminated on June 23, 1997, Arturo and Jose mailed the three UPS packages of marijuana to two separate persons at two different addresses. Two of the packages were sent to a fictitious person at Hoskins' address, and the third package was sent to another fictitious person at Seabolt's address. On the evening of June 22, 1997, Arturo made independent phone calls to both Byrd and Seabolt to inform them of the impending arrival of the marijuana shipments via UPS. Upon delivery, Hoskins signed for his packages and telephoned Byrd to inform him of their arrival. Seabolt, too, signed for his package upon delivery.

We conclude that Counts V and VI were committed during two distinct episodes of criminal conduct. Each episode was sufficiently unrelated and may be described independently without referring to the specific details of the other. Cf. Logan v. State, 693 N.E.2d 1331, 1333 (Ind.Ct.App. 1998) (fraudulent checks cashed at two different stores not a single episode), trans. denied; Reynolds v. State, 657 N.E.2d 438, 440–441 (Ind.Ct.App.1995) (burglaries of three homes on same day not a single episode); Tedlock, 656 N.E.2d at 276 (four sales of a particular illegal security to different victims not a single episode). Accordingly, we find no error.

### IV. Sentence

■ Finally, Arturo urges that the trial court's sentence is manifestly unreasonable and should be reduced. Sentencing decisions rest within the sound discretion of the trial court and are reversed only for an abuse of discretion. Blanche v. State, 690 N.E.2d 709, 714 (Ind.1998). We will not set aside or revise a sentence authorized by statute except where the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Id.; Ind. Appellate Rule 17(B).

■ Here, the trial court sentenced Arturo to an aggregate term of forty-eight years for his seven Class C felony convictions. With the two conspiracy convictions

vacated as discussed, *supra,* an aggregate sentence of thirty-two years remains. The evidence confirms that Arturo has a history of involvement in illegal drug activity. In March 1993, he was found guilty of felony possession of marijuana in Texas and sentenced to seven years' supervised probation. Arturo's probation was transferred to Tippecanoe County in June 1993; however, following a subsequent drug arrest in Texas, his probation was revoked in August 1995 and he was sentenced to eighteen months in the Texas Department of Correction.

At the sentencing hearing, the trial court articulated its sentencing decision as follows:

> You have dealt a large quantity of marijuana over a long period of time in this community, which the Court takes into consideration, the extent of the operation which was one of the biggest cases in terms of volume and organization that this community has seen based upon the testimony of the officer.[17] You have recently violated conditions of any probation, parole granted to you by the State of Texas. You are in need of correctional or rehabilitative treatment that can best be provided by your commitment to a penal facility giv[en the] prior attempts at rehabilitation through Tippecanoe County Probation Department, the Texas Department of Corrections, and Texas Probation Services. The Court accepts the Probation Officer's evaluation that you are a direct threat to the safety of this community in terms of your proclivity to bring in large amounts of marijuana over a long period of time. You have a history of criminal activity indicating continued involvement in shipping, dealing, and using controlled substances.

Although the trial court noted as a single mitigating factor that imprisonment of Arturo would result in a hardship to his children, it determined that this factor was outweighed by the several aggravating circumstances set forth above. Based upon the nature of the offense and the character of the offender as assessed by the trial court in this instance, we cannot say that Arturo's sentence is manifestly unreasonable. *See Bigler v. State,* 602 N.E.2d 509, 523 (Ind.Ct.App.1992) (thirty-four-year sentence for two counts of dealing in controlled substance not manifestly unreasonable in light of defendant's criminal history, seriousness of offense, and defendant's need of correctional or rehabilitative treatment, despite fact that defendant had dependent children and was in poor health), *trans. denied* ; *cf. Saunders v. State,* 584 N.E.2d 1087, 1089 (Ind.1992) (140–year sentence for three counts of dealing and three counts of conspiracy manifestly unreasonable); *cf. also Beno v. State,* 581 N.E.2d 922, 924 (Ind.1991) (seventy-four-year sentence for two counts of dealing and one count of maintaining a common nuisance manifestly unreasonable).

### Conclusion

For the foregoing reasons, we remand this cause to the trial court with instructions to vacate Arturo's convictions for conspiracy under Counts IV and VII. In all other respects, the judgment of the trial court is affirmed.

NAJAM and ROBB, JJ., concur.

---

**17.** Lieutenant William Stonebraker ("Lt. Stonebraker") testified at the sentencing hearing that Arturo and Jose were responsible for supplying much of the marijuana being sold in Tippecanoe County. Lt. Stonebraker estimated that from November of 1996 until August of 1997, the brothers were involved in transporting at least 300 pounds of marijuana into the county.