Lyndon P. ABRAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 63A01–0406–CR–231.

Court of Appeals of Indiana.

March 16, 2005.

Publication Ordered April 12, 2005.

Rehearing Denied May 17, 2005.

Robert R. Faulkner, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## MEMORANDUM DECISION

CRONE, Judge.

### Case Summary

Lyndon P. Abran appeals his convictions and sentence for possession with intent to deliver methamphetamine in a quantity exceeding three grams as a class A felony, possession of methamphetamine in a quantity exceeding three grams as a class C felony, possession of methamphetamine and a firearm as a class C felony, resisting law enforcement as a class D felony, possession of paraphernalia as a class A misdemeanor, reckless driving as a class B misdemeanor, and unlawful use of a police radio as a class B misdemeanor. We affirm.

### Issues

Abran presents three issues for our review, which we restate as follows:

I. . Whether the trial court abused its discretion by admitting evidence police seized during a search of his vehicle;

II. Whether the State sufficiently established venue in Pike County; and

III. Whether the trial court violated his Sixth Amendment rights by ordering an enhanced sentence.

### Facts and Procedural History

On September 6, 2003, Indiana Department of Natural Resources ("IDNR") Conservation Officer Dwayne Englert saw a brown Ford pickup truck at an intersection in Gibson County and recognized the driver as Abran. Aware that Abran had an outstanding arrest warrant, Officer Englert followed the truck, noted the license plate number, and turned on his emergency lights to signal Abran to pull over. Abran did not stop, and a chase ensued. Abran led Officer Englert into Pike County, where eventually his vehicle slowed and stopped along the side of County Road 400 West. Abran then exited his truck and ran away from Officer Englert. He submitted to an arrest only when threatened with chemical mace. During the arrest, Abran told Officer Englert that he had a knife in his pocket and a shotgun in his truck. When he searched Abran, Officer Englert also found $3,000 in cash, a vial containing three chunks of a chalky-white substance, and a small clear bag containing an off-white powder. Later testing indicated that the vial and bag contained methamphetamine.

Officer Englert decided to impound Abran's truck because there was no one on the scene to drive it away. According to the written standard operating procedure of the IDNR, an officer must perform an inventory search when a vehicle is impounded. St. Exh. 1, p. 1. It is the IDNR's unwritten standard operating procedure to open all unlocked containers found during an inventory search. Tr. at 248. As Officer Englert approached the truck, he overheard a police scanner and noticed several suspicious items in the truck bed, including a coffee grinder wired into the truck battery and containing white residue, a soda bottle with clear plastic tubing protruding from the lid, a glass jar with plastic tubing protruding from the lid, a cup with tubing protruding from the lid, several additional pieces of clear plastic tubing, a metal pipe capped on each end with metal tubing and a valve, gallon-sized glass jars, and two empty fuel cans. When Officer Englert saw these items, he recognized them as items often used in the manufacture of methamphetamine. While searching inside the passenger compartment of the truck, Officer Englert found an unlocked wooden box on the front seat. He opened it and discovered, *inter alia*, five glass pipes, a plastic bag containing brown powder, a plastic bag containing

white powder, coffee filters with powder residue, and Vector gram scales. He recorded many of these items on the inventory search form along with several tools, camping gear, clothing, and a spare tire that he found in the truck.

A jury found Abran guilty as charged. The trial court, noting several aggravating circumstances, ordered the maximum sentence for each count: fifty years in prison for possession of methamphetamine in excess of three grams with intent to deliver,[1] eight years for possession of methamphetamine in excess of three grams,[2] eight years for possession of methamphetamine while in possession of a firearm,[3] three years for resisting law enforcement,[4] one year for possession of paraphernalia,[5] 180 days for reckless driving,[6] and 180 days for unlawful use of a police radio.[7] The trial court merged the class C felony possession convictions and ordered that the remaining terms run concurrently. Abran now appeals.

### Discussion and Decision

#### I. Admissibility of Evidence

■ Abran argues that the evidence seized during Officer Englert's search of his truck is inadmissible because the inventory search was a pretext for an unlawful warrantless search for contraband. The State argues that Abran waived review of this issue because the basis of his objection at trial differs from the basis of his argument on appeal. In his motion to

1. Ind.Code § 35–48–4–1.

2. Ind.Code § 35–48–4–6.

3. Ind.Code § 35–48–4–6.

4. Ind.Code § 35–44–3–3.

5. Ind.Code § 35–48–4–8.3.

6. Ind.Code § 9–21–8–52.

7. Ind.Code § 35–44–3–12.

suppress and at trial, Abran argued that only the specific items Officer Englert found inside the wooden box were inadmissible because the act of opening closed containers during an inventory search was not required by IDNR's written standard of procedure. In contrast, Abran argues on appeal that *all* of the evidence seized from his truck was inadmissible because the State failed to prove that the inventory search was lawful under the Fourth Amendment. A defendant may not argue one ground for objection at trial and then raise new grounds on appeal. *Gill v. State*, 730 N.E.2d 709, 711 (Ind.2000). Therefore, Abran did indeed waive review of the trial court's decision to admit the evidence seized from his truck. Notwithstanding this waiver, we address the issue below.

■ Under both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution, the search was lawful and thus the evidence was admissible.[8] Our standard of review is well-established.

A trial court has broad discretion in ruling on the admissibility of evidence. Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court.

8. Abran presents authority and analysis in support of his claim that this search was unlawful under the Fourth Amendment. However, as the State points out, he waived review of this issue under the Indiana Constitution because he failed to present authority or independent analysis supporting the separate standard of Article 1, Section 11. *See Rybolt v. State*, 770 N.E.2d 935, 942 n. 2 (Ind.Ct.App.2002). Nonetheless, we will address both standards in our discussion.

*Washington v. State,* 784 N.E.2d 584, 587 (Ind.Ct.App.2003) (citations omitted).

The Fourth Amendment to the U.S. Constitution generally requires that a search of private property must be both reasonable and pursuant to a properly issued search warrant. *See Arkansas v. Sanders,* 442 U.S. 753, 758, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Fair v. State,* 627 N.E.2d 427, 430 (Ind.1993). Warrantless searches are per se unreasonable, subject only to a few well-delineated exceptions. *Arkansas,* 442 U.S. at 760, 99 S.Ct. 2586; *Fair,* 627 N.E.2d at 430. The "inventory exception" allows police to conduct a warrantless search of a lawfully impounded automobile if the search is designed to produce an inventory of the vehicle's contents. *South Dakota v. Opperman,* 428 U.S. 364, 375–376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Fair,* 627 N.E.2d at 430. After arresting Abran, Officer Englert decided to impound the vehicle and conduct an inventory search. In determining the propriety of an inventory search under the Fourth Amendment, the threshold question is whether the impoundment itself was proper. *Ratliff v. State,* 770 N.E.2d 807, 809 (Ind.2002).[9] To prevail on the question of whether an impoundment was warranted as part of the police department's community caretaking function, the State must show: (1) that the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing, and (2) that the decision to combat that threat by impoundment was in keeping with established department routine or regulation. *Fair v. State,* 627 N.E.2d at 433. The question is not whether there was an absolute need to remove the vehicle but whether the decision to do so was reasonable in light of the applicable standard. *Id.*

Here, Abran's truck slowly came to a stop along a two-lane gravel road, and Officer Englert believed that the stop was possibly caused by mechanical problems. Officer Englert testified that he was required to impound Abran's truck because there was no one else on the scene who could drive it away. Tr. at 245. Clearly, the truck, left abandoned on the side of the road with many items lying in the open bed, would be subject to vandalism or theft. Thus we find that Officer Englert's decision to impound the truck to protect Abran's property was reasonable. His belief that the vehicle and its contents would be at risk if left by the side of the road was consistent with objective standards of sound policing, and it was the established routine of the IDNR to impound a vehicle upon arrest of the driver, when no one else was present to drive the vehicle away.

Having decided that the impoundment of Abran's truck was lawful, we must now address the issue of the reasonableness of the search conducted thereafter. "[T]o pass constitutional muster, the

---

**9.** Officer Englert testified that the license plate on Abran's truck had an altered number and that the original number was not registered to that truck. Tr. at 458–59. Law enforcement officers are authorized by statute to impound a vehicle and perform an inventory search if the vehicle does not have "the proper certificate of registration or license plate." *Howard v. State,* 818 N.E.2d 469 (Ind.Ct.App.2004), *trans. denied.* (quoting Ind. Code § 9–18–2–43(a)). However, this evidence was not admitted at trial pursuant to the trial court's granting of Abran's motion in limine challenging the relevancy of the altered license plate. As the State points out, if Abran had argued at trial that the entire inventory search was unlawful under the Fourth Amendment (as opposed to just the search of the wooden box), this evidence may have been admitted as relevant to show Officer Englert's authority to impound the vehicle. Impoundment pursuant to statutes is clearly proper. *Fair v. State,* 627 N.E.2d 427, 431 (Ind.1993).

search itself must be conducted pursuant to standard police procedures." *Fair,* 627 N.E.2d at 435. The procedures must be rationally designed to meet the objectives that justify the search in the first place and must sufficiently limit the discretion of the officer in the field. *Id.* To defeat a charge of pretext, the State must establish the existence of sufficient regulations and that the search at issue was conducted in conformity with them. *Id.*

In this case, the IDNR's written standard of procedure indicates that upon impoundment, the officer must accomplish a complete vehicle inventory. St. Exh. 1, p. 1. The evidence shows that Officer Englert followed standard procedure in his search of Abran's truck. He performed the inventory search at the time of seizure. *See id.* He used formal inventory sheets to record Abran's personal affects, as well as items of a suspicious nature. *See id.* He also followed IDNR's standard of procedure (albeit unwritten) that during an inventory search, all unlocked closed containers must be opened. Tr. at 248. The evidence shows that IDNR's established procedure for inventory searches, which was closely followed by Officer Englert, meets its written objective, which is to "secure and protect vehicles and their contents within police custody." St. Exh. 1, p. 1; *see Fair,* 627 N.E.2d at 435. We conclude that under the Fourth Amendment, Officer Englert's inventory search was lawful, and the evidence seized is admissible.

■ To determine if a search and seizure is lawful under the Indiana Constitution, we apply a different analysis. Article 1, Section 11 protects those areas of life that Hoosiers regard as private from unreasonable police activity. *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995). In determining admissibility of evidence seized in a search, the trial court must consider the facts of the case to decide whether the police behavior was reasonable. *Id.* The provision must be liberally construed in its application to guarantee that people will not be subjected to unreasonable search and seizure. *Id.* It is the State's burden to prove that the search was reasonable under the totality of the circumstances. *Mitchell v. State,* 745 N.E.2d 775, 786 (Ind. 2001).

■ Here, Officer Englert recognized Abran and, knowing that there was a warrant for his arrest, signaled for him to pull over. Abran drove away from the officer at excessive speeds and led him on a chase into another county. When Abran's vehicle came to a stop, he jumped out and tried to escape on foot. He surrendered to Officer Englert only upon being threatened with chemical mace. After taking Abran into custody, Officer Englert searched his person and found a large roll of currency and a vial and clear bag that appeared to contain methamphetamine. Abran told Officer Englert that he had a shotgun in the truck. As Officer Englert approached the truck, he noticed many suspicious items in the truck bed that he recognized to be consistent with the manufacture of methamphetamine, and he heard a police scanner. Upon review of the totality of these circumstances, particularly considering the very volatile and dangerous nature of certain chemicals used to manufacture methamphetamine, we find that Officer Englert's search of the truck was reasonable under Article 1, Section 11. The evidence seized was admissible, and we find no abuse of discretion.

## II. Venue

■ Abran contends that the State failed to establish venue in Pike County because Officer Englert first spotted him in Gibson County and, if not for the police chase, he would have remained in Gibson

County. Thus, he argues, there was no evidence that he possessed methamphetamine with the intent to deliver it in Pike County.

It is the State's burden to prove that the offense charged occurred in the county identified in the charging information. Venue must be proven by a preponderance of the evidence and may be established by circumstantial evidence. The State has met its burden if the facts and circumstances of the case permit the jury to infer that the crime occurred in a given county. This Court treats a claim of insufficient evidence of venue in the same manner as other claims of insufficient evidence. Accordingly, we neither reweigh the evidence nor assess the credibility of witnesses, and look only to the evidence and the reasonable inferences to be drawn therefrom which support the conclusion of requisite venue.

*Chavez v. State*, 722 N.E.2d 885, 895 (Ind. Ct.App.2000) (citations omitted).

██ If all charges are integrally related—in other words, if one thing led to another—then the crimes may be considered a single chain of events for purposes of venue. *French v. State*, 266 Ind. 276, 284, 362 N.E.2d 834, 839 (1977). Here, Abran's crimes were clearly linked together. Assuming *arguendo* that he intended to commit most of the crimes—possession and delivery of methamphetamine, possession of methamphetamine and a firearm, possession of paraphernalia, and unlawful use of a police radio—only in Gibson County, it was his attempt to avoid prosecution for these crimes that led him to commit the other offenses, resisting law enforcement and reckless driving.

Further, the facts and circumstances of the case permitted the jury to infer that all of the crimes were committed in Pike County. *See Chavez*, 722 N.E.2d at 895.

In a similar drug dealing case, the appellant argued that the evidence was insufficient to establish venue in Tippecanoe County, where his "partner in crime" was arrested with drugs in his possession, because it was his partner's *practice* to sell the drug from his home in Montgomery County. *Id.* at 895–96. However, at the time of his arrest, the appellant's partner was traveling in Tippecanoe County with two pounds of marijuana between his legs on the car seat. *Id.* at 896. We did not reweigh the evidence in that case, and we likewise cannot do so here. Venue was properly established in Pike County.

### III. Sixth Amendment Challenge

Citing *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Abran asserts that the trial court erred in considering certain aggravating circumstances in its decision to enhance his sentence. He contends that five of the six aggravating circumstances found by the trial court were not proper because they were not submitted to the jury and proven beyond a reasonable doubt. *See Blakely*, 124 S.Ct. at 2536 (citing *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348). The State argues, *inter alia*, waiver.

The United States Supreme Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Recently, the United States Supreme Court decided *Blakely* to clarify what constitutes the "prescribed maximum sentence." *Blakely*, 124 S.Ct. at 2536. The Supreme Court held that the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to in-

crease the sentence for a crime above the presumptive sentence assigned by the legislature. *Id.* at 2538. The Supreme Court explained that the relevant statutory maximum for *Apprendi* purposes is the maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant. *Id.* at 2537.

■ We first address the State's waiver argument. Recently, a panel of this court examined a similar waiver argument and explained:

> [T]he "statutory maximum" as used by the United States Supreme Court in its 2000 *Apprendi* decision is different from that redefined in the 2004 *Blakely* decision. Indeed, in *Apprendi,* the statutory maximum was the ten-year prescribed statutory maximum, which a defendant could receive for a second-degree offense *if* the preponderance of certain aggravating and mitigating circumstances, as found by the trial court, weighed in favor of the higher term. By contrast, in *Blakely,* the "statutory maximum" is the maximum sentence that a trial judge may impose without any additional findings, i.e., the presumptive or standard sentence. Because *Blakely* redefined the "statutory maximum" for purposes of *Apprendi,* a defendant ... who challenges his enhanced sentence but fails to do so on grounds of *Apprendi* has not waived his argument pursuant to *Blakely.*

*Strong v. State,* 817 N.E.2d 256, 260 (Ind. Ct.App.2004) (citations omitted), *clarified on reh'g by* 820 N.E.2d 688 (Ind.Ct.App. 2005), *pet. for trans. pending.* Likewise, we find no waiver by Abran. Thus, we move to the substance of Abran's argument.

■ Abran was convicted of one class A felony, two class C felonies, one class D felony, one class A misdemeanor, and two class B misdemeanors. For each convic-

tion, the trial court ordered the maximum sentence allowed under the applicable statute. For example, for Abran's conviction for possession of methamphetamine in excess of three grams with intent to deliver, the trial court sentenced him to fifty years, which was the sum of the thirty year presumptive statutory sentence for a class A felony and the maximum enhancement of twenty years due to aggravating circumstances. *See* Ind.Code § 35–50–2–4. At the sentencing hearing, the trial court cited the following aggravating circumstances: Abran's criminal history, including convictions and prior terms of imprisonment for counterfeiting, possession of unregistered firearms, and battery, as well as multiple probation violations; the risk that he will commit another crime; the nature and circumstances of the crimes in this case; his character; and his need for treatment and rehabilitation.

■ We have previously determined that "the multiple convictions that the extensive criminal history comprises have already been proven beyond a reasonable doubt and are thus exempt from the *Apprendi* rule as clarified by *Blakely.*" *Carson v. State,* 813 N.E.2d 1187, 1189 (Ind. Ct.App.2004), *opinion on reh'g.* Further, we have previously held that two of the other factors considered by the trial court—Abran's need for rehabilitation best provided by incarceration and the likelihood that he will commit another crime—are simply derivative of his criminal history and, as such, do not require proof beyond a reasonable doubt. *Id.* Therefore, three of the five aggravating factors cited by the trial court are exempt from the *Blakely* analysis. We note that "a single aggravating circumstance is adequate to justify a sentence enhancement." *Id.* (citing *Powell v. State,* 769 N.E.2d 1128, 1135 (Ind.2002)). Even if our supreme court were to find that Indiana's sentencing

scheme runs afoul of the Sixth Amendment for the reasons articulated in *Blakely*, we conclude that this finding would have no effect on Abran's sentence.

Affirmed.

RILEY, J., and ROBB, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal on March 16, 2005 marked Memorandum Decision, Not for Publication.

Comes now the Appellant, by counsel, and files herein Motion to Publish Opinion, alleging therein that the opinion might potentially involve substantial legal issues of substantial public importance by virtue of the relative paucity of case law construing the United States Supreme Court's decision in *Blakely* and on the issue of venue in the State of Indiana.

The Court having reviewed its decision in this matter, having examined the Appellant's Motion to Publish Opinion and being duly advised, now finds that said Motion to Publish should be granted.

IT IS THEREFORE ORDERED that the Appellant's Motion to Publish Opinion is GRANTED, and this Court's opinion heretofore handed down in this cause on March 16, 2005 marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.