Keith COMBS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 67A05–0511–CR–652.

Court of Appeals of Indiana.

Aug. 4, 2006.

Transfer Denied Oct. 26, 2006.

Edward A. McGlone, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Keith Combs ("Combs") was convicted in Putnam Circuit Court of Class C felony possession of methamphetamine, Class A misdemeanor carrying a handgun without a license, and Class A misdemeanor possession of paraphernalia. He was sentenced to serve an aggregate term of six years with two years suspended. Combs appeals raising two issues, which we restate as:

I. Whether the trial court abused its discretion when it admitted evidence obtained during the warrantless search of Combs's vehicle; and,

II. Whether Combs's six-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

Concluding that the trial court did not abuse its discretion when it admitted the evidence obtained during the search of Combs's vehicle, but that Combs's sentence is inappropriate in light of the nature of the offense and the character of the offender, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

**Facts and Procedural History**

On January 24, 2005, at approximately 6:00 p.m., Putnam County Sheriff's Department Deputy Craig Sibbitt ("Deputy Sibbitt") received a dispatch concerning a report of a suspicious vehicle near the fire department at Van Bibber Lake. The vehicle was described as a white Cadillac with a license plate number of 60A8719. The caller, a captain of the fire department, alleged that the driver of the vehicle was possibly stealing gas from the department's fuel vehicle.

As he proceeded toward Van Bibber Lake, Deputy Sibbitt observed a white vehicle traveling from the direction of the lake, and turned around to follow it. When Deputy Sibbitt caught up to the vehicle, the driver, later identified as Combs, pulled the vehicle over to the side of the road. Deputy Sibbitt pulled in behind the vehicle and activated his emergency lights. Before he approached the vehicle, the deputy confirmed that the license plate number matched the number given in the dispatch.

As Deputy Sibbitt was speaking with Combs, his behavior made the deputy nervous. Combs was leaning sideways in the vehicle and had his arm between his legs underneath the seat. Because Combs was also acting paranoid, speaking rapidly, and appeared to have dry mouth, Deputy Sibbitt believed that Combs was possibly under the influence of methamphetamine.

Deputy Sibbitt returned to his vehicle to relay Combs's information to dispatch and learned that Combs's driver's license was suspended. Also, at that time the deputy requested backup because of concern for his safety and due to the fact that he was acquainted with Combs socially.

Deputy Mike Johnson, who is also a canine officer, arrived shortly thereafter. Deputy Johnson told Combs to sit in Deputy Sibbitt's vehicle, and Deputy Sibbitt began to write a citation to Combs for driving while suspended. At that time, Deputy Johnson observed behavior that also led him to believe that Combs was under the influence of methamphetamine. Therefore, Deputy Johnson walked his canine around the perimeter of Combs's vehicle. The canine alerted by the driver's side front door.

Combs was then read his Miranda rights and Deputy Johnson requested consent to search the vehicle. Combs refused and told the officers that he did not own the vehicle. Combs was then asked to call the owner of the vehicle and request consent to search. After contacting the vehicle's owner, Combs told the deputies that the owner would not give his consent to search the vehicle.

Because the vehicle was parked in an unsafe location, Deputy Johnson called for a tow truck and started to conduct an inventory search of the vehicle. During the inventory search, Deputy Johnson found two loaded handguns under the driver's seat. After Combs stated that he did not have a handgun permit, he was arrested for carrying a handgun without a license. Deputy Johnson also found a knife, a smoking pipe, and a baggie containing a powdery substance that was later determined to be methamphetamine with a weight of 0.10 grams.

On January 26, 2005, Combs was charged with Class C felony possession of methamphetamine, Class A misdemeanor

carrying a handgun without a license, and Class A misdemeanor possession of paraphernalia.[1] On July 13, 2005, Combs filed a motion to suppress the evidence obtained from the alleged illegal search of the vehicle. The motion was denied and a jury trial commenced on that same day. The jury found Combs guilty as charged. Combs was then sentenced to serve a six-year sentence with two years suspended for his Class C felony possession of methamphetamine conviction. Combs now appeals. Additional facts will be provided as necessary.

## I. Admission of Evidence

Combs argues that the trial court abused its discretion when it admitted the evidence obtained during the warrantless vehicle search. Because Combs challenges the admission of the evidence following a completed trial, "the issue is . . . appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State,* 784 N.E.2d 584, 587 (Ind.Ct.App.2003). Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pretrial motion to suppress or by trial objection. *Ackerman v. State,* 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State,* 822 N.E.2d 214, 218 (Ind.Ct.App. 2005), *trans. denied.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

### A. *Reasonable Suspicion*

██ Initially, we must determine whether Deputy Sibbitt had reasonable suspicion to make an investigatory stop.[2]

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" by the Government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. However, a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity "may be afoot."

Reasonable suspicion is a "somewhat abstract" concept, not readily reduced to "a neat set of legal rules." When making a reasonable suspicion determination, reviewing courts examine the "totality of the circumstances" of the case to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. The reasonable suspicion requirement is met where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. We review the trial court's ultimate determination regarding reasonable suspicion de novo.

*State v. Atkins,* 834 N.E.2d 1028, 1032 (Ind.Ct.App.2005), *trans. denied* (internal citations omitted). In support of his argument that Deputy Sibbitt lacked reasonable suspicion to subject him to an investigatory stop, Combs relies on *State v. Glass,* 769 N.E.2d 639 (Ind.Ct.App.2002),

---

1. Combs was also charged with driving while suspended, however, the State dismissed this charge prior to trial.

2. Combs does not raise any challenge to the investigatory stop and subsequent search of the vehicle under the Indiana Constitution.

*trans. denied,* and *Washington v. State,* 740 N.E.2d 1241 (Ind.Ct.App.2000), *trans. denied.*

In *Glass,* a patrolling police officer received a dispatch of a "suspicious vehicle for reckless driving" and was provided with a description of the vehicle. 769 N.E.2d at 640. The officer found the vehicle, and initiated a traffic stop after following it for one block, even though the officer did not witness any traffic violations or inappropriate driving. *Id.* As a result of the stop and subsequent search, Glass was charged with possession of marijuana, reckless possession of paraphernalia as a Class A misdemeanor, and operating a vehicle with a controlled substance or metabolite in his body as a Class C misdemeanor. Prior to trial, Glass successfully moved to suppress all evidence, arguing that the detention and search occurred without reasonable suspicion. Our court affirmed, stating:

> The State merely showed that the caller described a car sufficiently to permit Officer Fluery to identify a similar vehicle. The officer followed the vehicle for about one block without observing any driving irregularities. Officer Fluery did not personally observe facts to verify the reliability of the caller or the reliability of any significant information provided by the caller. To the extent that the caller predicted future conduct, it did not occur. Reasonable suspicion requires more than conjecture. On the record created, the State has not demonstrated that Officer Fluery had an objective and articulable suspicion that Glass had committed, was committing, or was about to commit legal wrongdoing. The investigative stop violated Glass's Fourth Amendment rights.

*Id.* at 644.

In *Washington,* an anonymous informant contacted a state police post to re-

port a possible drunk driver and described the vehicle as a black Cadillac with a white top proceeding southbound on Interstate 65. 740 N.E.2d at 1243. The informant also provided the license plate number of the Cadillac. *Id.* An officer found and began to follow the vehicle, and although he did not observe any evidence of drunken or erratic driving, the officer initiated a traffic stop of the vehicle. *Id.* Washington was placed under arrest because his license was suspended, and marijuana and cocaine were found during a subsequent search of the vehicle. *Id.* Prior to trial, Washington moved to suppress the evidence obtained during the search, but his motion was denied. On appeal, our court reversed, stating:

> We accordingly hold that an anonymous telephone tip, absent any independent indicia of reliability or any officer-observed confirmation of the caller's prediction of the defendant's future behavior, is not enough to permit police to detain a citizen and subject him or her to a Terry stop and the attendant interruption of liberty required to accomplish it.

*Id.* at 1246.

In both *Glass* and *Washington,* the officers received a report of reckless or drunk driving and initiated a traffic stop without an officer-observed confirmation of such driving behavior. This was not the factual preface to the stop before us. Accordingly, we agree with the State's assertion that Combs's reliance on these cases is misplaced.

Here, Mark Keyt, a captain of the Van Bibber Lake volunteer fire department called 911 to report that a man driving a white vehicle was possibly stealing gas from the department's fuel truck. Tr. pp. 87–89. Deputy Sibbitt received the dispatch reporting a suspicious vehicle near the fire department described as a "white,

Cadillac looking vehicle" bearing the license plate number 60A8719. Tr. p. 4. The dispatch stated that the driver of the vehicle was possibly stealing gas.

As Deputy Sibbitt proceeded toward Van Bibber Lake, he observed a white vehicle coming from that area which he "thought fit the description of the vehicle." Tr. p. 98. Therefore, the deputy turned around and began to follow the vehicle. When Deputy Sibbitt caught up to the vehicle, Combs pulled the vehicle over to the side of the road. Tr. pp. 5, 98. Deputy Sibbitt pulled over behind the vehicle and then activated his emergency lights.[3] At that time, Deputy Sibbitt confirmed that the license plate number was the same number provided in the dispatch. When Deputy Sibbitt initially spoke with Combs, he stated that he followed Combs because of the report of a suspicious vehicle at Van Bibber Lake. The deputy also obtained Combs's social security number and date of birth after Combs stated that he left his driver's license at home.

■ Although Combs pulled over voluntarily and Deputy Sibbitt did not initiate a traffic stop, a reasonable person would not have felt free to leave after Deputy Sibbitt indicated that he was investigating a report of a suspicious vehicle and asked for Combs's identifying information.[4] Thus, the consensual nature of the initial encounter quickly evolved into an investigative stop. *See Finger v. State*, 799 N.E.2d 528, 533 (Ind.2003).

However, we conclude that Deputy Sibbitt had reasonable suspicion to detain Combs for a brief period of time to investigate the report of alleged theft of gas from the fire department. Importantly, the 911 call was not anonymous. In addition, the call was made by the captain of the volunteer fire department, a person whose testimony is clothed with an expectation of objective accuracy.[5] Deputy Sibbitt was provided with a description of the vehicle including the license plate number and had a report that the driver of the vehicle had allegedly stolen gas. Deputy Sibbitt observed a vehicle matching the description traveling from the direction of Van Bibber Lake and confirmed the license plate number before approaching the vehicle. Under the totality of the circumstances, we conclude that Deputy Sibbitt had reasonable suspicion to briefly detain Combs to investigate the alleged theft of gas from the fire department.

### B. *The Warrantless Vehicle Search*

■ Next, we must determine whether the vehicle was searched in violation of Combs's Fourth Amendment rights. In general, the Fourth Amendment prohibits warrantless searches and seizures. *Moultry v. State*, 808 N.E.2d 168, 170 (Ind. Ct.App.2004). When a search is conducted without a warrant, the State has the burden of proving that the search was allowed under an exception to the warrant requirement. *Cheatham v. State*, 819 N.E.2d 71, 74 (Ind.Ct.App.2004). The automobile exception to the warrant requirement per-

---

3. Deputy Sibbitt stated he activated his emergency lights at that point because it was dark, there was snow on the ground, and the vehicles were pulled over in a "very unsafe spot." Tr. p. 99.

4. At the suppression hearing, Deputy Sibbitt testified that he told Combs that "it was called in that he had been at Van Bibber and that I could not let him go[.]" Tr. p. 7.

5. It is not clear from the record whether Deputy Sibbitt was aware that Captain Mark Keyt made the 911 call, however, "an investigative stop may be based upon the collective information known to the law enforcement organization as a whole." *See Moultry v. State*, 808 N.E.2d 168, 172 (Ind.Ct.App.2004).

mits a warrantless search of an automobile where an officer has probable cause to believe that the vehicle contains contraband or evidence of a crime. *Id.* Probable cause exists where the facts and circumstances would lead a reasonably prudent person to conclude that a search of the vehicle will uncover evidence of a crime. *Id.*

In *Myers v. State,* 839 N.E.2d 1146, 1148 (Ind.2005), a police officer initiated a traffic stop of Myers's vehicle and during the stop, the officer observed that Myers's hands were shaky, he appeared very nervous, was speaking rapidly, and had constricted pupils. There was also a strong scent of cologne in the car. *Id.* at 1148–49. While the officer was filling out a warning ticket, he requested a canine unit to assist with the stop. The canine alerted to the exterior passenger side of the vehicle and subsequently reacted to the interior of the vehicle. The officers then performed a warrantless search of the vehicle and discovered methamphetamine in the glove compartment and the trunk. *Id.* at 1149.

On appeal of the denial of his motion to suppress, Myers argued that the police officers lacked a valid basis to conduct a canine sniff of his vehicle. *Id.* In rejecting Myers's argument, our supreme court observed, "a canine sweep of the exterior of a vehicle does not intrude upon a Fourth Amendment privacy interest." *Id.* Therefore, "probable cause is . . . not a prerequisite to the use of this police investigative technique." *Id.* at 1150. The court then concluded,

> We are persuaded that the positive reaction of the narcotics-detection dog to the exterior of the defendant's vehicle, however, especially in light of the defen-

dant's dilated pupils, his extreme nervousness, and the presence of heavy cologne mist, constituted probable cause for further police investigation regarding the contents of the vehicle's interior. *Id.*

In this case, after Deputy Sibbitt obtained Combs's identifying information, he discovered that Combs's driver's license was suspended. Therefore, Deputy Sibbitt requested backup in part because he knew he would likely have to have the vehicle towed. Tr. p. 106. Combs's behavior also made the deputy "very nervous" because Combs kept one hand between his legs underneath the seat of the vehicle as he spoke to Deputy Sibbitt. Tr. p. 102. Moreover, Deputy Sibbitt suspected that Combs was under the influence of methamphetamine because he was acting paranoid, speaking rapidly, and appeared to have dry mouth. Tr. p. 107.

Deputy Johnson also suspected that Combs was under the influence of methamphetamine. Therefore, he took his canine and ran him around the perimeter of the vehicle. Tr. p. 143. The canine alerted at the driver's side door. Deputy Johnson then mirandized Combs. After Combs refused to consent to a search of the vehicle, Deputy Johnson called for a tow truck and started to conduct an inventory search of the vehicle.

■■■■ In his brief, Combs contends that the inventory search of the vehicle was illegal because the "police intended to conduct, and did conduct, and [sic] investigatory search that they are now attempting to disguise as an inventory search." Br. of Appellant at 15. However, we need not address Combs's precise argument[6]

---

**6.** "The 'inventory exception' allows police to conduct a warrantless search of a lawfully impounded automobile if the search is designed to produce an inventory of the vehi-
cle's contents." *Abran v. State,* 825 N.E.2d 384, 390 (Ind.Ct.App.2005), *trans. denied.* To determine the propriety of an inventory search, the threshold question is whether the

because we conclude that the deputies had probable cause to conduct a warrantless search of the vehicle.

■ Here, as in *Myers*, the narcotics-detection canine alerted to the exterior of the vehicle and the deputies believed that Combs was under the influence of methamphetamine due to his paranoid behavior, rapid speech, and dry mouth. Under these facts and circumstances, the deputies had probable cause to believe that the vehicle contained contraband or evidence of a crime. Moreover, the vehicle was "readily mobile." [7] Therefore, we conclude that the search of the vehicle was proper and the trial court did not abuse its discretion when it admitted the evidence obtained during the warrantless search.

## II. Inappropriate Sentence

■ Finally, we must consider whether Combs's sentence is inappropriate in light of the nature of the offense and the character of the offender. Appellate courts have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B) (2005);

*Marshall v. State*, 832 N.E.2d 615, 624 (Ind.Ct.App.2005), *trans. denied.*

■ In our consideration of the appropriateness of Combs's sentence we respectfully disagree with our colleague, Judge Vaidik. We believe that as a matter of fundamental fairness and under the pertinent caselaw as it currently stands, even appellate review of sentences under Appellate Rule 7(B) is constrained by *Blakely*. *See Williams v. State*, 827 N.E.2d 1127, 1128 (Ind.2005) ("Or we could alter the sentences ourselves within the bounds of *Blakely* using our review and revise power."). We therefore limit our review of the nature of the offense and the character of the offender to those considerations that are permitted under *Blakely*, that have been proved beyond a reasonable doubt or that have been admitted by the defendant.

Combs was ordered to serve an enhanced sentence of six years with two years suspended for his Class C felony possession of methamphetamine conviction. Pursuant to Indiana Code section 35–50–2–6 (2004), "[a] person who commits a Class C felony shall be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances." [8]

---

impoundment itself was proper. *Id.* If the court determines that the impoundment is lawful, the court then must consider whether the "search itself [is] conducted pursuant to standard police procedures." *Id.* at 390–91. In this case, there was no one at the scene to drive the vehicle away and it was pulled over on the side of a snowy road at night. The subsequent inventory search was performed at the time of seizure and Deputy Johnson used a formal inventory sheet to record the contents of the vehicle. This was consistent with the Putnam County Sheriff's Office standard operating procedure for impoundment of a vehicle. *See* Tr. pp. 35–36.

7. The "ready mobility" requirement of the automobile exception means that "all opera-

tional, or potentially operational, motor vehicles are inherently mobile, and thus a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present." *Myers*, 839 N.E.2d at 1152.

8. Between the date of Combs's offense, January 24, 2005, and the date of sentencing, August 11, 2005, Indiana Code section 35–50–2–6 was amended to provide for an "advisory" sentence rather than a presumptive sentence. *See* P.L. 71–2005, § 9 (eff. April 25, 2005). The amendment to section 35–50–2–6 constitutes a substantive change in a penal statute and may not be applied retroactively.

In sentencing Combs, the trial court found two aggravating circumstances and no mitigating circumstances. The court made the following statements in imposing Combs's sentence:

He did test positive for methamphetamine which was the underlying charge on two urine screens as well as he does have a prior substance abuse even though it is seven, excuse me, approximately eleven years ago. I don't think the Court can find as an aggravating circumstance that there are additional charges filed against him but there has been probable cause found that those other charges have at least probable cause for them to be charged and they also at least two of them deal with methamphetamine which is the same substance and the same reason we are here on this case.

Tr. p. 206.

Combs argues that the trial court improperly considered his positive test for methamphetamine while this case was pending. After Combs tested positive for methamphetamine on March 29, 2005, the State filed a petition to revoke Combs's bond. Combs filed a response requesting a hearing and stating that he had "not violated the terms of bond set by the court." Appellant's App. p. 21. Shortly thereafter, the trial court revoked Combs's bond without holding a hearing on the State's petition. At sentencing, Combs argued that he should not have tested positive and noted that the State was never required to prove a positive test result. Tr. p. 202.

■ We agree with Combs that the trial court should not have considered the positive test result for methamphetamine

as an aggravating circumstance because the State never proved the positive test result beyond a reasonable doubt. *See Blakely v. Washington,* 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

■ Therefore, the only aggravating circumstance properly considered by the trial court and reflective of his character on appellate review is Combs's prior misdemeanor conviction for possession of marijuana. The "[s]ignificance [of a defendant's criminal history] varies based on the gravity, nature and number of prior offenses as they relate to the current offense." *Cotto v. State,* 829 N.E.2d 520, 526 (Ind.2005). Although Combs's prior offense also involved an illegal substance, its significance is quite limited because it was a misdemeanor conviction and the offense was committed over ten years ago.

With regard to the nature of the offense, we observe that Combs was convicted of possession of only 0.10 grams of methamphetamine. Given the nature of the offense and the extremely limited significance of Combs's prior conviction as a reflection on his character, we conclude that his six-year sentence with two years suspended is inappropriate in light of the nature of the offense and the character of the offender.

In her dissent, as she considers Combs's character, Judge Vaidik relies in part on the methamphetamine charges pending against Combs. Although the trial court mentioned these pending charges at the sentencing hearing, that court properly

Therefore, in this case, we are required to apply the prior "presumptive" sentencing scheme. *See Weaver v. State,* 845 N.E.2d 1066, 1071–72 (Ind.Ct.App.2006), *trans. denied. But see Samaniego–Hernandez v. State,* 839 N.E.2d 798, 805 (Ind.Ct.App.2005).

stated that those charges could not be considered in sentencing Combs.[9] Tr. p. 206. Judge Vaidik also concludes that Combs's allegedly positive test result for methamphetamine while Combs was out on bond supports the appropriateness of his enhanced sentence. Not only did Combs not admit the allegation; he contested it, and the State never proved the allegation beyond a reasonable doubt. Therefore, we believe that the allegation is an improper aggravator both at the trial level and on appeal. *See Williams*, 827 N.E.2d at 1128.

Addressing the nature of Combs's offense, Judge Vaidik concludes that Combs was under the influence of methamphetamine while driving the vehicle. At trial, the officers testified that they were suspicious that Combs was under the influence of methamphetamine. Tr. pp. 107, 142. Yet, Combs was not charged with driving while under the influence, and a jury determination was never made that Combs was under the influence of methamphetamine. Once again, we believe that consideration of this suspicion would violate Combs's right to trial by jury and proof beyond a reasonable doubt under *Blakely*.

Judge Vaidik also notes that Combs was in possession of two loaded handguns and a knife at the time of his arrest. Combs was convicted of Class A misdemeanor carrying a handgun without a license and ordered to serve a sentence concurrent to his sentence for possession of methamphetamine. Accordingly, Combs has been punished for the offense of possession of a handgun and the use of its operative facts to aggravate his sentence is not proper.

Finally, Combs's possession of a knife was entirely lawful as far as the record discloses. Therefore, that fact is not a proper aggravator at the trial or appellate level.

For all of these reasons, Comb's six-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Therefore, we remand this case to the trial court with instructions to reduce Combs's sentence to the presumptive sentence of four years.

### Conclusion

The trial court properly admitted the evidence obtained during the warrantless vehicle search. However, Combs's six-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

ROBB, J., concurs.

VAIDIK, J., concurs in part and dissents in part with opinion.

VAIDIK, Judge, concurring in part and dissenting in part.

I agree with the majority that the warrantless search of the car was proper. However, I part ways with the majority's analysis and conclusion on the inappropriate sentence issue. I therefore concur in part and dissent in part.

The jury found Combs guilty of Class C felony possession of methamphetamine, Class A misdemeanor possession of paraphernalia, and Class A misdemeanor car-

---

9. In relying on Combs's pending methamphetamine charges, Judge Vaidik cites to *Johnson v. State*, 837 N.E.2d 209, 218 (Ind.Ct. App.2005), *trans. denied*. *Johnson* cites to the following statement from *Cotto*, 829 N.E.2d at 526, "a record of arrests, particularly a lengthy one, may reveal that a defendant has

not been deterred even after having been subject to the police authority of the State." Importantly, in *Cotto*, the defendant failed to raise a *Blakely* claim, and therefore, the court determined that any such claim was waived. *Id.* at 524 n. 2.

rying a handgun without a license. The trial court identified as aggravators that Combs violated the conditions of his release on bond in the instant case by twice testing positive for methamphetamine and that Combs has a prior substance abuse conviction, specifically, a conviction for possession of marijuana from approximately eleven years before.[10] The trial court identified no mitigators. Finding that the aggravators outweighed the mitigators, the trial court sentenced Combs to an enhanced sentence of six years with two years suspended to probation for Class C felony possession of methamphetamine.[11] The trial court ordered the sentences for the other convictions to be served concurrently.

In reaching its conclusion that Combs' sentence is inappropriate, the majority found that one of the aggravators identified by the trial court—that Combs twice tested positive for methamphetamine while out on bond—violated *Blakely* because the State never proved the positive test result beyond a reasonable doubt. As a result, the majority found that there was only one proper aggravator—Combs' distant possession conviction. Given the low quantity of methamphetamine found on Combs and the "extremely limited significance" of Combs' prior possession conviction, the majority concluded that Combs' sentence was inappropriate and reduced it to the presumptive term of four years. Op. at 1062. For the reasons that follow, I believe that Combs' sentence is appropriate.

I first point out that Combs was sentenced under the old "presumptive" sentencing scheme. Under that scheme, we first determine whether the trial court properly found and balanced the mitigating and aggravating circumstances. Even if we assume that the trial court improperly considered as an aggravator Combs' methamphetamine use while out on bond because it violated *Blakely*, Combs' sentence was still correctly enhanced because of his prior conviction for possession of marijuana. Although this conviction is more than ten years old, it relates directly to his current drug offenses. *See Williams v. State*, 838 N.E.2d 1019, 1021 (Ind.2005) ("The significance of a criminal history varies based on the gravity, nature and number of prior offenses as they relate to the current offense.") (quotation omitted). This aggravator, particularly in the absence of any mitigators, is sufficient to sustain Combs' aggravated sentence. *See id.*

Because Combs' enhanced sentence is statutorily proper under our presumptive sentencing scheme as well as under *Blakely*, we then conduct an independent review of the sentence for appropriateness under Indiana Appellate Rule 7(B). In doing so, we look to the nature of the offense and the character of the offender. This review is more expansive and may consider more than simply a "re-look" at the appropriate aggravators and mitigators. *See Childress v. State*, 848 N.E.2d 1073, 1079–1080 (Ind. 2006) ("Indeed even where the trial court has been meticulous in following the proper procedure in imposing a sentence, 'we still may exercise our authority under Appellate Rule 7(B) to revise a sentence that *we conclude* is inappropriate in light of the nature of the offense and the character of

---

10. The trial court also identified as an aggravator that the imposition of a reduced or suspended sentence and imposition of probation would depreciate the seriousness of the crime. However, this aggravator is improper.

11. Pursuant to Indiana Code § 35–50–2–6 (2004), the presumptive sentence was four years, with the minimum sentence being two years and the maximum sentence being eight years.

the offender.'") (quoting *Hope v. State,* 834 N.E.2d 713, 718 (Ind.Ct.App.2005)). To be sure, if our review under Appellate Rule 7(B) were limited to reviewing the proper aggravators and mitigators found by the trial court, then the reviews would be co-extensive. Our Supreme Court emphasized in *Childress* that even though a trial court may have acted within its lawful discretion when imposing a sentence, Article VII, Section 6 of the Indiana Constitution authorizes "independent appellate review." *Id.* at 1080. In our independent review under Appellate Rule 7(B), we are not constrained by using only *Blakely* aggravators.[12]

*Blakely* is concerned with the *enhancement* of a defendant's sentence based on facts not proven beyond a reasonable doubt. 542 U.S. 296, 303–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Under Appellate Rule 7(B), Indiana appellate courts may not increase a defendant's sentence. See Ind. Appellate Rule 7(A) ("A *defendant* in a Criminal Appeal may appeal the defendant's sentence.") (emphasis added).[13] As such, Appellate Rule 7(B) does not implicate *Blakely*. Therefore, when analyzing the nature of the offense and the character of the offender under Appellate Rule 7(B), appellate courts may rely upon facts that were not proven beyond a reasonable doubt because there is simply no danger to the defendant that his sentence will be increased. Indeed, Appellate Rule 7(B) is used as a vehicle to *reduce* a defendant's sentence. Using this framework, I now proceed to address whether Combs' sentence is inappropriate by looking to the nature of the offenses and his character.[14]

As for Combs' character, the record shows that he has a prior conviction for possession of marijuana. Although this conviction is over ten years old, two of Combs' convictions in the present case are drug-related. Moreover, when Combs was out on bond in this case, he twice tested positive for methamphetamine in violation of the conditions of his bond. As a result, Combs had his bond revoked. And at the time of sentencing in this case, Combs had two methamphetamine charges pending against him. *See Johnson v. State,* 837 N.E.2d 209, 218 (Ind.Ct.App.2005) ("When evaluating the character of an offender, a trial court may consider the offender's arrest record in addition to actual convictions. A record of arrests, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State.") (quotation and internal citation omitted), *trans. denied.* This shows that Combs is not able to conform his conduct to the law, even when he knows that he is being drug tested and must not use drugs as a condition of his liberty.

---

12. Had Combs' sentence not been statutorily proper or had his sentence violated *Blakely* (such as if *all* of the aggravators were improper under *Blakely*), we also could have exercised our constitutional authority to revise his sentence rather than remand to the trial court. *See Neff v. State,* 849 N.E.2d 556, 562 (Ind.2006); *Williams v. State,* 827 N.E.2d 1127, 1128 (Ind.2005). In this instance only, the reviews would be co-extensive.

13. Appellate Rule 7(A) also provides, "The State may not initiate an appeal of a sentence, but may cross-appeal where provided by law." The State may appeal only those matters specified in Indiana Code § 35–38–4–2. *See Lewis v. State,* 769 N.E.2d 243, 247 n. 5 (Ind.Ct.App.2002), *aff'd on reh g,* 774 N.E.2d 941, *trans. denied.* In addition, the State may also appeal when a trial court fails to sentence a defendant in accordance with statutory requirements. *Id.* None of these reasons include increasing a defendant's sentence because it is inappropriate.

14. This may not be the same framework we work with when we review sentences under the new "advisory" sentencing scheme.

Regarding the nature of the offense, it is true that a small amount of methamphetamine was found in the car. However, at the time Combs was stopped, he was driving a car, he was under the influence of methamphetamine, and he possessed two loaded guns and a knife. This dangerous combination persuades me that the nature of this offense is serious. After due consideration of the trial court's decision, I cannot conclude that the two years of probation tacked on to Combs' four-year sentence makes his sentence inappropriate. I therefore dissent on this issue.

