## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2016, 7:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Giavonda Chandler,<br>*Appellant-Defendant,*<br><br>*v.*<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 21, 2016<br><br>Court of Appeals Case No.<br>02A04-1606-CR-1460<br><br>Appeal from the Allen Superior Court<br><br>The Hon. Wendy Davis, Judge<br><br>The Hon. David M. Zent, Magistrate<br><br>Trial Court Cause No. 02D04-1511-CM-4574 |

**Bradford, Judge.**

# Case Summary

[1] Early on a morning in November of 2015, two Fort Wayne Police Officers responded to a report of a disturbance with shots fired from either a black Cadillac or a pickup truck. When the officers encountered a vehicle matching the reported description one block away and driving away from the scene, they stopped it. Appellant-Defendant Giavanda Chandler and a passenger were ordered from the vehicle at gunpoint, patted down for weapons, and handcuffed. When one officer attempted to secure the vehicle, he noticed a handgun sticking out of a purse on the driver's seat. Once it was determined that Chandler was not licensed to carry a handgun, officers placed her under arrest. A search of Chandler's person revealed a plastic baggie containing marijuana, and a search of her purse uncovered a marijuana cigarette. The State charged Chandler with Class A misdemeanor carrying a handgun without a license and Class B misdemeanor marijuana possession, and the trial court found her guilty as charged. Chandler contends that the trial court abused its discretion in admitting evidence (1) regarding the course of the officers' investigation and (2) seized as a result of the officers' stop of her vehicle and searches of her person and her purse. Because we conclude that Chandler has waived her argument with regard to course-of-the-investigation testimony and that evidence was not seized from her in violation of her constitutional rights, we affirm.

# Facts and Procedural History

[2] At approximately 4:00 a.m. on November 29, 2015, Fort Wayne Police Officers Jason Fuhrman and David Bush responded to a report of a disturbance in the 1600 block of Elmrow Street. Both officers were informed en route that shots had been fired by the occupants of either a black Cadillac or a pickup truck. Officer Fuhrman, who was only three blocks away when he received the report, approached and observed a black Cadillac STS driving away from the area. The STS was approximately one block away from the scene of the disturbance.

[3] As Officer Bush approached, driving toward the STS, the STS signaled a turn down a roadway on which Officer Fuhrman was approaching but ended up continuing through the intersection. Eventually, both officers fell in behind the STS and initiated a stop. Both officers remained shielded behind their vehicles' doors, drew their weapons, and ordered the driver of the STS to emerge. Chandler emerged from the driver's side, and the officers ordered her to walk back to the patrol cars, where they handcuffed her and patted her down for weapons. The officers followed the same procedure for the passenger.

[4] While Officer Fuhrman was checking the passenger for weapons, Officer Bush approached the STS, on which Chandler and the passenger had left the front doors open. Officer Bush observed a large handbag on the driver's seat with a handgun clearly visible inside. The officers determined that Chandler did not possess a handgun license and arrested her. During a search of Chandler's person, the officers located a small plastic bag of marijuana. The officers also conducted an inventory search of the STS before towing it and found a marijuana cigarette in Chandler's handbag.

[5] Later the same day (November 29, 2015), the State charged Chandler with Class A misdemeanor carrying a handgun without a license and Class B misdemeanor marijuana possession. On April 15, 2016, the trial court found Chandler guilty as charged and sentenced her to 180 days of incarceration for each count, to be served concurrently. On May 25, 2016, the trial court denied Chandler's motion to correct error.

# Discussion and Decision

[6] Both of Chandler's arguments are that the trial court abused its discretion in admitting certain evidence. The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans. denied*. We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*. The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*.

# I. Course-of-the-Investigation Evidence

Chandler contends that the trial court abused its discretion in admitting course-of-the-investigation evidence tending to show why Officers Fuhrman and Bush stopped her Cadillac, treated the stop as high-risk, etc. In this appeal, Chandler asserts that the course-of-the-investigation testimony was inadmissible hearsay that violated her constitutional right to confront those witnesses against her. However, the basis on which Chandler now claims that the testimony was erroneously admitted, *i.e.*, it tends to show why the officers acted in the manner they did, is the very basis on which she conceded it *was* admissible below. Because Chandler is making an argument inconsistent with the one made below, she has waived the issue for appellate consideration. The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), *trans. denied* (citation omitted). By assenting to the offer of evidence below on the ground that she now challenges, Chandler has waived this argument.

## II. Article 1, Section 11 of the Indiana Constitution

[8] Chandler also contends that the trial court abused its discretion in admitting all of the evidence seized from her as a result of the stop and search. Article 1, Section 11, of the Indiana Constitution[1] provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[9] The Indiana Supreme Court has noted that

> [w]hile almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001); *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999); *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005) (citing *Moran*, 644 N.E.2d at 539). "We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id*. at 360. In *Litchfield*, we summarized this evaluation as follows:

---

[1] Chandler also argues on appeal that her rights pursuant to the Fourth Amendment to the United States Constitution were violated. Chandler's argument at trial, however, was limited to an alleged violation of the Indiana Constitution. Chandler may not now raise this ground on appeal. "A party may not object on one ground at trial and raise a different ground on appeal." *White v. State*, 772 N.E.2d 408, 411 (Ind. 2002).

In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.

*Id*. at 361.

*Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005).

[10]    Investigatory stops invoke the Article 1, Section 11 protections of the Indiana Constitution. *Rutledge v. State*, 426 N.E.2d 638, 642 (Ind. 1981). An individual's right of free movement under Article 1, Section 11 is not absolute, for society has a right to protect itself. *Williams v. State*, 261 Ind. 547, 551, 307 N.E.2d 457, 460 (Ind. 1974). In balancing these factors, our courts gauge the reasonableness of an investigatory stop by striking "'a balance between the public interest [behind the investigation] and the individual's right to personal security free from arbitrary interference from law officers.'" *Platt v. State*, 589 N.E.2d 222, 225 (Ind. 1992) (alteration in original) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L .Ed. 2d 607 (1975)).

An investigatory stop of a citizen by a police officer does not violate that citizen's constitutional rights if the officer has a reasonably articulable suspicion of criminal activity. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind. 1997) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *United States v. Hatch*, 827 F. Supp. 536, 541 (N.D. Ind. 1993)). Reasonable suspicion is a "somewhat abstract" concept that is not readily reduced to a "neat set of legal rules." *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L .Ed. 2d 740 (2002). As the Court of Appeals has written on the topic,

> A police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity "may be afoot."

> *Combs v. State*, 851 N.E.2d 1053, 1057 (Ind. Ct. App. 2006).

*State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011).

[11] Here, the officers were provided information regarding an alleged shooting by police dispatch, the source of which information was not divulged at trial. Consequently, we shall assume that the source was an anonymous tip.

> The trustworthiness of hearsay from an informant can be established in a number of ways, including where (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; *or* (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. *Scott v. State*, 883 N.E.2d 147 (Ind. Ct. App. 2008). Where a tip from a confidential informant is "completely lacking in indicia of reliability and the record offers no evidence that the confidential informant was reliable[,] the tip [is] ... inadequate" to establish reasonable suspicion. *Johnson v. State,* 659 N.E.2d 116, 119 (Ind. 1995).

*Teague v. State*, 891 N.E.2d 1121, 1128-29 (Ind. Ct. App. 2008), *trans. denied*.

[12] Under the circumstances of this case, we conclude that the police had a reasonably high degree of concern that Chandler's vehicle had been involved in a shooting. Officers initially responded to a report of a disturbance and were

soon thereafter informed that it was believed that shots had been fired from a black Cadillac or pickup truck. Although there is no indication that either the officers or dispatch knew the identity of the tipster, the evolving nature of the information provided to the officers over a short period of time leads to an inference that the tipster was a witness at the scene, with dispatch passing along information to the officers as it was received.

[13] Of greater importance, the officers were able to corroborate the information relayed to them almost immediately. Officer Fuhrman was three blocks away from the reported scene of the shooting when he responded, encountering a black Cadillac a block away from the scene traveling away from it. It should also be noted that the Cadillac signaled a turn onto a street occupied by Officer Bush but did not complete the turn. It may be inferred that Chandler decided not to complete her turn upon observing Officer Bush in his fully-marked police vehicle. Finally, the events at issue occurred at 4:00 a.m., when traffic is likely to be very light, thereby greatly lessening the chances that police would stop a vehicle based on mistaken identity. The time of day; the fact that Chandler's vehicle matched the description; the seeming attempt to evade the police; the proximity to, and travel away from, the scene of the alleged shooting; and the very short time that elapsed before Chandler's vehicle was seen provided officers with sufficient specific information to corroborate the tip and reasonably believe that her Cadillac STS was the one that had been involved in the alleged shooting.

[14] Also considering the circumstances, the degree of intrusion into Chandler's activities was not inappropriately severe. Officers, reasonably believing that they were stopping a vehicle from which shots had just been fired, employed procedures for a high-risk stop. While protecting themselves, the officers ensured first that the visible passengers were not armed and dangerous and then verified that no other possible shooters remained in the Cadillac. It was Officer Bush in the process of securing the vehicle who noticed the handgun in plain sight in Chandler's purse. Only after determining that Chandler was not licensed to possess a handgun were further searches conducted incident to the arrests of her and her passenger.

[15] Finally, the needs of law enforcement were great. Officers were responding to a report of a disturbance with shots fired, possibly to confront a person who had already fired a weapon, was fleeing the scene, and was likely still armed. The need to respond quickly to a report of shots fired in order to protect the public and authorities is obvious. Under the circumstances, the officers' actions in stopping Chandler's vehicle—and afterwards—were reasonable. Chandler has failed to establish that her rights pursuant to Article 1, Section 11 were violated.

[16] The judgment of the trial court is affirmed.

Vaidik, C.J., and Brown, J., concur.